# Henry M. Eshbach, Appellee, v. Abraham M. Byers, Appellant.

## Gen. No. 5499.

1. PLEADING—*when plea of tender insufficient.* A plea setting up a tender made after suit brought is insufficient where it does not tender costs up to the time of the making of the tender.

2. BANKS—*obligations as to special deposit.* If a bank receives a special deposit for the purpose of providing for certain payments and agrees that such special deposit shall be subject only to·checks drawn on account of such payments, such bank will not be permitted to divert such special deposit.

Appeal from the Circuit Court of Mercer county; the HON. EMERY C. GRAVES, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed October 13, 1911. *Certiorari* denied by Supreme Court (making opinion final).

CHURCH & CHURCH and BASSETT, MORGAN & HEBEL, for appellant.

W. J. GRAHAM, for appellee; D. W. HAMILTON, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

Albert M. Blaise brought this suit against A. M. Byers & Company Farmers Bank and Abraham M. Byers upon certain checks drawn by Henry M. Eshbach upon said bank in 1909, some of which checks were payable to Blaise and others were assigned to him by the payees, which checks it was alleged the bank refused to pay. These checks were drawn after the enactment of the Negotiable Instrument Law of 1907. Section 126 of that Act changes the rule theretofore prevailing in this State and enacts that the drawing of a bill of exchange does not operate as an assign-

ment of the fund and the drawee is not liable on the
bill unless and until he accepts the same. The bank
had not accepted these checks. A demurrer to the
declaration was sustained, apparently on that ground.
It appeared that Byers was the general partner.
Thereafter the name of the bank was dropped from
the case and the suit was prosecuted in favor of Esh-
bach for the use of Blaise against Byers only, and an
amended declaration was filed. It contained seven
counts. The first was withdrawn at the trial. The
seventh was the consolidated common counts, but was
qualified by a bill of particulars, which stated that
the cause of action therein relied upon arose out of
the matters alleged in the first six counts of the declar-
ation and none other. The declaration therefore con-
sists practically of the second to the sixth counts, in-
clusive. It is sufficient to say that they stated fully
a right of action in Eshbach to recover the fund here
in question for the use of Blaise. Byers filed the
general issue and three special pleas; the first that the
promises alleged in the declaration were not in writ-
ing; the second a set-off; the third an accounting with
Eshbach and a small sum found due to Eshbach and
a tender thereof. A demurrer by plaintiff to the
special pleas was sustained. Defendant has not as-
signed for error the sustaining of said demurrer, so
that the correctness of that ruling is not before us. We
deem it proper, however, to say that the action of the
court was unquestionably right. The promises averred
in the second to the sixth counts were not such as are
required to be in writing; the matters described in the
plea of set-off could not, in the view we hereafter take,
be lawfully set-off against the fund here sought to be
recovered, and the plea of accounting and tender is
insufficient in many respects, one of which is that it
fails to tender the costs to the date of tender, which
was long after the suit was begun. The first and sec-

ond special pleas might have been good to the seventh count if it had not been restricted by the bill of particulars. The case was submitted, without a jury, practically upon the second to the sixth counts, inclusive, of the declaration and the plea of the general issue, and there was a finding in favor of plaintiff for $2,793, and some time later a judgment for $2,808.20 which included interest on the finding from the date thereof. Defendant below appeals.

Eshbach was a buyer of horses. When he purchased a lot of horses, he was accustomed to draw checks on the Farmers' Bank, in favor of the sellers, for the purchase price, and then deposit in the bank a draft upon the house in Chicago to whom he consigned the horses, and the bank was accustomed to pay these checks before the draft was honored. Shortly before July 16, 1908, Eshbach's account at the bank was overdrawn, but he had about enough horses in hand to make it good. The president of the bank informed Eshbach that he must arrange his account differently or the bank would no longer honor his checks. Eshbach then procured from M. Newgass & Son of Chicago to whom he was shipping horses, a letter of credit as follows:

"M. Newgass & Sons.
Commission salesmen of horses, Union Stock Yards, Monthly Auction Sales of High Grade Coach and Road Horses.    Auction every Wednesday, Thursday and Friday.

Chicago, Ill. July 16, 1908.
A. M. Byers & Company, Aledo, Illinois,
Gentlemen:—Mr. Eshbach, whom you know has been shipping horses to us for a number of years and making drafts on us will hand you this letter in which we wish to state that we will honor all drafts made by Mr. Eshbach. What we would like to have you do is to arrange matters so you can pay for his horses and make your draft when he ships. We will at all

times pay drafts on presentation. Our reason for asking this favor from you is by having our money out in the country for a week or ten days, not only in one case of Mr. Eshbach but it should happen with all our consignors, we would have all our money in the country and not in the proper place here. You and ourselves both know Mr. Eshbach is responsible and reliable, and, if you can see fit to favor him in this way it will greatly oblige,

Yours very truly,<br>M. Newgass & Son."

Eshbach delivered this letter to the bank, and the latter resumed paying his checks in reliance on the letter of credit, but the bank not only paid checks for horses bought and shipped to Newgass, but also checks for his household expenses and other matters, not relating to horses. The bank kept but one general account with Eshbach and credited to it all drafts and charged to it all checks. When the bank received this letter of credit Eshbach's general account was overdrawn. Afterwards he had a balance to his credit and again his general account was overdrawn. On August 3, 1909, Eshbach drew a draft on Newgass to the order of the Bank for $5,250 and mailed it to the bank and was credited therewith. He bought a lot of horses in Iowa and issued checks therefor on this bank. Newgass refused to pay the draft and the bank refused to pay the checks. Thereafter there were interviews at the bank in Aledo and also in Chicago. At the last meeting in Chicago the cashier of the bank and Eshbach and Blaise were present. Blaise was threatening to attach the horses for which these checks had been drawn, said horses being then in the stables of Newgass in Chicago. Blaise was one of the sellers of the horses and he represented all the sellers and all the holders of these checks. The very clear preponderance of the evidence is that the cashier was anxious that Blaise should not attach these horses, for such action would greatly com-

plicate the efforts of the bank to collect the draft from Newgass and that it was thereupon agreed that in consideration that Blaise would not attach the horses, the bank would pay these checks out of what it realized from Newgass on the draft. The cashier returned to his bank. As before stated, these checks had previously been presented to the bank and payment refused. After this arrangement made in Chicago, Blaise notified the bank at Sigourney, Iowa, which had these checks in its possession, and the Iowa bank again sent these checks to the Farmers' Bank. The latter held them without action for some two months. Meantime the Farmers' Bank sued Newgass on the dishonored draft and it was settled and paid and after deducting attorney's fees and expenses in Chicago, $4,716.01 was remitted to the Farmers' Bank as the proceeds of said draft. It seems that the Farmers' Bank had also advanced $150 attorney's fees, which it also was entitled to deduct, leaving the net avails of the draft $4,566.01. An officer of the Farmer's Bank testified that if this draft had been paid when it was drawn, the Farmers' Bank would have paid these checks, but when this money was finally received it determined to apply that money upon Eshbach's overdraft upon them, and did so, and returned the checks to the Iowa Bank. Blaise not only held the checks by assignment, but also had a contract with the various payees of the checks, by which they all shared in the expenses and proceeds of a suit to recover the fund. The $2,973 which the court found for plaintiff, was the exact amount of all the checks given to pay for that shipment of horses to Newgass.

We are of opinion that the true construction of the letter of credit is that it was intended to give Eshbach credit for the horses which he should buy and ship to Newgass, and that it was not intended and could not reasonably be understood by the Farmers' Bank to be intended to give Eshbach credit for grocer-

ies or household supplies or horses bought and shipped to other firms, or for any matters outside of the purchase of horses shipped to Newgass. We are satisfied that when the officers of the Farmers' Bank received this draft for $5,250 they knew that it was intended as a special deposit to pay for horses shipped to Newgass. The case then is that Eshbach deposited a special fund with the Farmers' Bank to pay for certain horses shipped to Newgass and drew checks against that deposit to pay for those horses; and that afterwards the cashier of the Farmers' Bank also specially agreed that in consideration that Blaise, representing the holders of all the checks, would not attach the horses in the possession of Newgass, he would apply the proceeds of the draft, when collected, to the payment of these particular checks, and that this promise was made to both Blaise and Eshbach, and that in reliance thereon Blaise did not attach the horses. Thereafter the Farmers' Bank diverted the proceeds of the draft to another indebtedness of Eshbach to the bank, and refused to pay the checks pursuant to promise. As the fund was deposited originally for the special purpose of paying for horses shipped to Newgass, and the bank had notice thereof, and afterwards the bank specially agreed that it would apply this fund when collected, to the payment of these particular checks, we are of opinion that Eshbach had a right to recover from the bank for the use of the holders of the checks the amount of said checks. This judgment only compels the bank to apply the money as it agreed to do. Not only is there no plea of set-off and no question raised thereon by the assignment of errors, but it is obvious that, as against the special fund, there could be no such set-off.

The motion to tax the costs of the additional abstract against appellant will be granted and the judgment will be affirmed.

*Affirmed.*