## SOUTHERN EXCHANGE BANK *v.* POPE.

1. The amendment to the petition did not set forth a new cause of action, and it was properly allowed.
2. The petition set forth a cause of action; the special demurrer to it was not meritorious; overruling the demurrers was not error.
3. The case upon its substantial merits is controlled by the legal principles announced in the second division of the opinion; the request to charge was, so far as consistent with the law of the case, covered by the general charge; the verdict was authorized by the evidence; and in none of the grounds of the motion for a new trial does cause for a reversal of the judgment below appear.

No. 2156. SEPTEMBER 30, 1921.

Equitable petition. Before Judge E. D. Graham. Wheeler superior court. March 24, 1920.

Daniel Pope sued the Bank of Alamo of Wheeler County, the

Southern Exchange Bank of Dublin, Laurens County, and C. R. Williams of the latter county. The substance of the petition here material is to the following effect: Pope as treasurer of Wheeler county had a deposit account with the Bank of Alamo, subject to his checks drawn in such official capacity, and subject also to warrants drawn on him as treasurer by the board of commissioners of roads and revenues of that county in favor of those to whom the county was indebted. On April 23, 1915, the board drew an order or warrant on Pope as treasurer of Wheeler County, in favor of F. P. Heifner, for $4755.31. This warrant was held for collection by the Bank of Wheeler County, and was presented by that bank to Pope for payment, who directed that the warrant be presented for payment to the Bank of Alamo. This was done; whereupon the Bank of Alamo informed Pope that he as treasurer did not have a sufficient fund on deposit in that bank to pay the warrant, and that the deficiency was approximately $2500. Pope thereupon, as treasurer of Wheeler County, drew a check on the Farmers Bank of Glenwood, payable to the Bank of Alamo, for the sum of $2000, at the same time giving to the Bank of Alamo his check, as treasurer, on the Wheeler County Bank for the sum of $500. These checks were delivered by Pope to the Bank of Alamo in accordance with an express agreement between him and that bank that the two checks were given and were to be used only for the specific purpose of paying the county warrant drawn on him as treasurer in favor of Heifner by the board of commissioners. The Bank of Alamo sent the $500 check to the Wheeler County Bank, and it was paid. The Bank of Alamo delivered its check on the Southern Exchange Bank, its correspondent, to the Bank of Wheeler County for an amount sufficient to pay the balance due on the county warrant in favor of Heifner, and deposited with the Southern Exchange Bank the check for $2000, drawn by Pope as treasurer on the Farmers Bank of Glenwood and in favor of the Bank of Alamo, this check "to be credited [by the Southern Exchange Bank] to the account of the Bank of Alamo, for the purpose of paying the draft of the Bank of Alamo on said Southern Exchange Bank, given to pay said order," or warrant. The Southern Exchange Bank refused to pay the check drawn on it by the Bank of Alamo and in favor of the Bank of Wheeler County; whereupon Pope stopped payment by the Farmers Bank of

Glenwood of the check for $2000 drawn by him on it and in favor of the Bank of Alamo. Thereupon the cashier and president of the Bank of Alamo assured Pope that the check of that bank on the Southern Exchange Bank and in favor of the Wheeler County Bank would be paid if he would permit payment of his check for the $2000 on the Farmers Bank of Glenwood. Pope thereupon agreed to allow payment of his check, and it was paid to the Southern Exchange Bank; but that bank refused the check drawn on it by the Bank of Alamo for the purpose of paying the Wheeler County Bank the amount of the county warrant to Heifner, and Pope as treasurer was forced to pay Heifner " from other funds in the treasury of said County of Wheeler." The Southern Exchange Bank, with knowledge that Pope's check on the Farmers Bank of Glenwood was given by him to the Bank of Alamo for the special purpose of being appropriated, together with other funds he had on deposit in the Bank of Alamo, to the payment of the county warrant drawn on him as treasurer, appropriated such $2000 in paying existing indebtedness due the Southern Exchange Bank by the Bank of Alamo, and refused to pay any part thereof to Pope, or to the Bank of Alamo. The Bank of Alamo was insolvent when the county warrant was presented to it for payment, and has since continued in that condition; and its cashier falsely represented to Pope that the bank would and could pay the county warrant with the money of his on deposit, together with the amount of his checks for $2500. Williams, the president of the Southern Exchange Bank, knew of the insolvency of the Bank of Alamo during the transactions set forth in the petition, and the Southern Exchange Bank had received from the Bank of Alamo large quantities of its paper for the purpose of giving the Southern Exchange Bank preference for whatever amount might be due it in case the Bank of Alamo should have to discontinue its business. Among others, there were prayers in the petition that the Bank of Alamo be enjoined from disposing of any of its assets and preferring any of its creditors, that a receiver be appointed to take charge of its assets, and that plaintiff have judgment against all of the defendants. Over objection of the defendants an amendment to the petition was allowed, which, in substance set up that after Pope had stopped payment of his check for $2000 drawn on the Farmers Bank of

Glenwood and in favor of the Bank of Alamo, and while the check was in the possession of the Southern Exchange Bank, that bank, through its president, Williams, offered and proposed that, if Pope would allow his check paid, the Southern Exchange Bank would pay the check drawn by the Bank of Alamo on the Southern Exchange Bank and in favor of the Wheeler County Bank, for the purpose of paying the county warrant; that Pope thereupon agreed to allow the Farmers Bank of Glenwood to pay his check; but that the Southern Exchange Bank thereafter refused to pay the check drawn by the Bank of Alamo on it in favor of the Bank of Wheeler County, and in settlement of the county warrant, and refused to pay Pope any part of the $2000. The Southern Exchange Bank demurred to the petition generally and specially. It also answered, denying all the material allegations except such as it could neither admit nor deny for want of sufficient information. The Bank of Alamo made no defense, and a verdict was directed against it. A verdict was rendered against the Southern Exchange Bank for the sum of $2000 and interest thereon. It moved for a new trial, which was refused, and it excepted, assigning error upon that ruling, and also upon exceptions pendente lite to the allowance of the amendment to the petition and the overruling of its demurrers thereto. Williams seems in some way to have dropped out of the case, and there were no rulings or findings as to him.

*Larsen & Crockett,* for plaintiff in error.  *W. S. Mann,* contra.

FISH, C. J.  (After stating the foregoing facts.)

1. The amendment to the petition was properly allowed over objection by the defendant " that it was irrelevant and immaterial and changed the cause of action and set up a new cause of action."

2. Nor was it error to overrule the demurrers to the petition. " A deposit may be for a specific purpose; as where money or property is delivered to the bank for some particular designated purpose, as a note for collection, money to pay a particular note or draft, etc. While such a deposit is sometimes termed a ' special deposit ' and partakes of the nature of a special deposit to the extent that title remains in the depositor and does not pass to the bank, yet it seems more accurate to look on this as a distinct class of deposit. In using deposits made for the purpose of having them applied to a particular purpose, the bank acts as the agent

of the depositor, and, if it should fail to apply it at all, or should misapply it, it could be recovered as a trust deposit; and the agency created by the deposit is revokable by the depositor at any time before the purpose of the deposit has been accomplished." 7 C. J. 632, § 307, where many cases are cited in support of the text in notes 7, 8, 9, 10, 11. Among the cases cited are *Mc-Gregor* v. *Battle,* 128 *Ga.* 577 (58 S. E. 28, 13 L. R. A. (N. S.) 185), and *Howard College* v. *Pace,* 15 *Ga.* 486. It was held in the latter case: "Where money is paid by A into the hands of B, to remain at the disposal of C, the right to that money continues in A until B gives and C takes credit for it, or B actually pays it to C; up to this period B is the agent of A only, and A may countermand the authority to make the payment; in the same manner as a person who sends another to pay money may stop him before he arrives at the place where it is to be paid, and require him to deliver it back." Also *Mayer* v. *Chattahoochee National Bank,* 51 *Ga.* 325 (2), was cited. It was there held: "When A deposits money in a bank, with direction that it is to be paid out to a check which he has given, or will give, to C, the money is still the money of A until the bank either pays it, lor promises C to pay it, or unless it be deposited at the instance or procurement of C, or under an arrangement with him." In Dolph v. Cross, 153 Iowa, 289 (133 N. W. 669), it was held that a depositor, making a deposit for the specific and stated purpose of meeting checks which he had just issued, binds the bank by the special conditions imposed, and does not make the bank merely the debtor of the depositor, as is the case with general deposits. And it has been held that a parol direction is sufficient to create a " specific deposit " or a deposit for some specific, designated purpose.

Of course it is the duty of the bank, when it becomes the agent of a depositor by accepting from him a " specific deposit," or one for a particular designated purpose, to use the deposit for that purpose and no other; and it has been held that the least turning aside by an agent of funds of his principal, held by the agent for a particular, designated purpose, is legally a wrongful act, and subjects any person who knowingly aids in such diversion to full responsibility. 21 R. C. L. 833, § 15.

Notice to the president of a bank of facts affecting its interest is imputed to the bank. *Fouché* v. *Merchants National Bank,* 110 *Ga.* 827 (3) (36 S. E. 256), and cases cited; *Faircloth* v. *Taylor,* 147 *Ga.* 787 (4) (95 S. E. 689) ; Balfour *v.* Fresno Canal etc. Co., 123 Cal. 395 (55 Pac. 1062) ; Magee on Banks and Banking (3d ed.), 120; 1 Michie on Banks and Banking, 825, § 116 (1) ; 834, § 116 (3).

A principal can not ratify an act of his agent in part, and repudiate it in part. He must either ratify or repudiate it in its entirety; if he receives money or other benefit under a contract of his agent he must restore it upon demand, or account for it.

Applying the foregoing legal principles to the allegations of the petition as set forth in the statement of facts preceding this opinion, it set forth a cause of action against the Southern Exchange Bank, as well as the Bank of Alamo. The special demurrer to the petition was without merit. The ground of it was that the petition did "not definitely and fully inform this defendant of the facts that would impart to it such knowledge of the facts and circumstances upon which the plaintiff relies that would put this defendant on notice of the special deposit and trust as aforesaid."

3. The rulings announced in the third headnote do. not need elaboration.

*Judgment affirmed. All the Justices concur, except Hill, J., absent.*