(August 5, 1922.)

JOHN G. FRALICK, Commissioner of Finance, and EZRA R. WHITLA, Special Deputy of the Commis  ner of Finance, Appellants, v. COEUR D'ALENE BANK & TRUST COMPANY, a Corporation, INTERSTATE UTILITIES COMPANY, and JOHN F. DAVIES, Respondents, Re Application of INTERSTATE UTILITIES COMPANY and JOHN F. DAVIES for a Preference.

[210 Pac. 586.]

BANKS AND BANKING — INSOLVENCY — GENERAL DEPOSIT — SPECIAL DEPOSIT—TRUST FUND—PREFERENCE.

1. A deposit of money in a bank, in the absence of evidence to the contrary, is presumed to be general, and the burden of proof is on the depositor to prove that it is a special deposit.

2. A bank deposit is subject to any agreement which the depositor and banker may make in regard to it, so long as the rights of third parties are not violated.

3. Upon the insolvency of a bank, a party seeking preference on the ground that the amount claimed is a trust fund must show that the relation between himself and the bank is that of trustee and *cestui que trust*, and not that of creditor.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. John M. Flynn, Judge.

Action to impress a trust upon the assets of an insolvent bank. Judgment for defendants. *Reversed.*

R. L. Black, Attorney General, Dean Driscoll, Assistant, and Ezra R. Whitla, for Appellants.

The deposits made with the Coeur d'Alene Bank & Trust Co. under all of the accounts were but general deposits and subject to withdrawal by the Utilities Co. at any time, and

Publisher's Note.

Trust fund deposit as preferred claim against insolvent bank, see note in Ann. Cas. 1913D, 391.

the fact that the company advised the bank that they were there to pay certain items and authorized the bank to charge those items to the account does not make the deposit a special deposit. (*Kaesemeyer v. Smith*, 22 Ida. 1, 123 Pac. 943, 43 L. R. A., N. S., 100.)

The presumption is that the account is not a special deposit. "A deposit is presumed to be general." (*Koetting v. State*, 88 Wis. 502, 60 N. W. 822; *State v. Carson City Sav. Bank*, 17 Nev. 146, 30 Pac. 703; *Alston v. State*, 92 Ala. 124, 9 So. 732; *Butcher v. Butler*, 134 Mo. App. 61, 114 S. W. 564; Morse on Banking, pars. 56, 57.)

The nature of agreement between the parties made it a general deposit and no trust fund proposition can be claimed. (*Marine Bank v. Fulton County Bank*, 69 U. S. 252, 17 L. ed. 785; *Mutual A. Assn. v. Jacobs*, 141 Ill. 261, 33 Am. St. 302, 31 N. E. 414, 16 L. R. A. 516; *State B. & Sav. Assn. v. Mechanics' Sav. Bank & Trust Co.* (Tenn. Ch.), 36 S. W. 967.)

The fact that it was deposited for some special purpose makes no difference. (*Dearborn v. Washington Sav. Bank*, 13 Wash. 345, 42 Pac. 1107; Morse on Banking, par. 210; *Warren v. Mix*, 97 Ark. 374, 135 S. W. 896.)

The fact that the payment of money is to be made in a particular way or subject to a condition does not make any difference, and if the money is deposited the relation of debtor and creditor or customer making the general deposit arises. (*Missouri Pac. Ry. Co. v. Continental Nat. Bank*, 212 Mo. 505, 111 S. W. 574, 17 L. R. A., N. S., 994; *Law v. Appeal of Philadelphia Finance Co.* (Pa. St.), 14 L. R. A. 103.)

Potts & Wernette, for Respondents.

A deposit made in a bank for a specific purpose is a special deposit, or trust fund. (7 C. J. 631, note 10; *Decatur Creamery Co. v. West Side Trust & Savings Bank*, 213 Ill. App. 220; *Meador v. Rudolph* (Tex. Civ.), 218 S. W. 520; *Dolph v. Cross*, 153 Iowa, 289, 133 N. W. 669; *Shopert v. Indiana Nat. Bank*, 41 Ind. App. 474, 83 N. E.

515; *Paige v. Springfield Nat. Bank,* 12 Ohio App. 196; *Peak v. Elliott,* 30 Kan. 156, 1 Pac. 499; *Wilson v. Dawson,* 52 Ind. 513; *Whitcomb v. Carpenter,* 134 Iowa, 227, 111 N. W. 825, 10 L. R. A., N. S., 928; *McBride v. American etc. Co.* (Tex. Civ.), 127 S. W. 229; *Southern Exchange Bank v. Pope,* 152 Ga. 162, 108 S. E. 551; *Hitt Fireworks Co. v. Scandinavian Am. Bank,* 114 Wash. 167, 195 Pac. 13; *Kies v. Wilkinson,* 101 Wash. 340, 172 Pac. 351; *Carlson v. Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A., N. S., 317; *Capitol Nat. Bank v. Coldwater Nat. Bank,* 49 Neb. 786, 59 Am. St. 572, 69 N. W. 115; *Continental etc. Bank v. Chicago etc. Co.,* 199 Fed. 704; *Woodhouse v. Crandall,* 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385.)

A general deposit may be converted into a special deposit by agreement without actual delivery to the customer, and a redeposit by him for a special purpose. (*State v. Grills,* 35 R. I. 70, 85 Atl. 281; *People v. City Bank,* 96 N. Y. 32; *First Nat. Bank v. Hall,* 119 Ala. 64, 24 So. 526.)

RICE, C. J.—The Interstate Telephone Company, a corporation, issued its negotiable bonds in the amount of $500,000, to secure which it executed and delivered to respondent Coeur d'Alene Bank & Trust Company, as trustee, a mortgage and deed of trust covering all of its properties. Thereafter, respondent Interstate Utilities Company purchased all the property and assets of the said telephone company, subject to said bond issue and the mortgage or deed of trust securing it, and guaranteed the payment of said bonds at maturity. Thereafter, said respondent Interstate Utilities Company issued $1,000,000 of its own negotiable coupon bonds, to secure which it executed and delivered to respondent Coeur d'Alene Bank & Trust Company, as trustee, a mortgage and deed of trust of all its properties. By the terms of these bonds and trust deeds the respondent Interstate Utilities Company was required to pay at the Hanover National Bank, New York, or at respondent Coeur d'Alene Bank & Trust Company, on April 1st and October 1st of each year, six per cent interest on the amount of the out-

standing bonds. Said respondent Utilities Company deposited certain funds in the said Coeur d'Alene Bank & Trust Company, which, it claims, constituted special deposits or trust funds, which did not become general assets of the bank, and could be used only for the purpose of paying the interest coupons on said bonds. By the terms of the agreement under which respondent Interstate Utilities Company took over the assets of the telephone company it was provided that the bonds of the latter might be exchanged for bonds of the former. The Interstate Utilities Company deposited certain funds in the respondent Coeur d'Alene Bank & Trust Company, which, it claims, were deposited as a special fund for the adjustment of interest on the two issues of bonds when such exchanges were made. It claims that funds so deposited did not become a part of the assets of the bank, but constituted a special deposit or trust fund, which could be used only for the purpose of adjusting interest on exchange. Subsequent to such deposits the said bank became insolvent, and was taken in charge by appellants John G. Fralick, Commissioner of Finance, and Ezra R. Whitla, his special deputy, in accordance with the statutes of this state, and an order of court based thereon. Respondent John F. Davies holds some of the bonds in question. He and the Interstate Utilities Company filed a petition, asking that all the deposits above mentioned be decreed to be special deposits or trust funds to be used only for the purpose of paying interest coupons on the bonds, and that a trust be declared and enforced upon all the assets of said insolvent bank in favor of said applicants to the extent of said deposits. The trial court found that the moneys so deposited were special deposits and trust funds, received and held by said bank for the sole purpose of paying the interest coupons or paying interest on exchange of bonds, and by its judgment impressed upon all the assets of said bank in the hands of appellants a trust to the amount of said funds so deposited, ordering that the appellants pay to the Interstate Utilities Company the amount of said funds, to wit, $12,258, to be held by it in trust for the use and benefit of the

owners and holders of the interest coupons on outstanding bonds. Appellants' many assignments of error amount simply to this, that the court erred in finding that said deposits were special deposits or trust funds in giving applicants a preference over the other depositors and creditors of the bank.

The president and cashier of the bank, and the president of the Utilities Company, all testified that the only agreement is such as is to be gathered from the letters, vouchers and receipts which passed between the bank and the company.

On April 30, 1920, the Interstate Utilities Company wrote the following letter to the bank:

"Enclosed find check for $11,400 to cover Interest Coupons due May 1, 1920, on bonds of this company, second issue, in hands of public.

"Please open a special fund for this purpose and report to us at the end of each month on coupons paid from such fund, and oblige."

In reply, on May 1, 1920, the cashier of the bank sent the following letter to the Interstate Utilities Company:

"We have your letter of April 30th, enclosing copy of letter from Lewis Williams and check for $11,400, for which accept our thanks.

"At present we have an Interest Coupon Bond Account thru which payment is made of interest coupons presented for payment. Is that the account to which the $11,400 is to be credited or should another account be opened to take care of the May 1st, second issue coupons. . . . . ''

On May 4, 1920, the Interstate Utilities Company replied as follows:

"Replying to your favor of the 1st inst., we would ask that you open a new account to take care of the Interstate Utilities Company Bond Coupons payable May 1st and November 1st.

"This will make four accounts with your bank—the General Account, the Interstate Telephone Company, Ltd., Bond Interest Fund, the Fund for payment of interest on Bonds

Exchanged, and the Interstate Utilities Company Bond Interest Fund.

"We enclose pass book, which you will kindly balance as at April 30th when reporting Interstate Telephone Company, Ltd., coupons paid in April. . . . . "

On October 29, 1920, the Interstate Utilities Company sent the following letter to the bank:

"Let this be your authority to transfer from the General Fund of this company in your bank, to the Bond Interest Fund of this company for payment of Bond Interest Coupons on 2nd issue Bonds, the amount of $4,603.50.

"We enclose herewith our check in the amount of $7,015.50, which with the amount requested transferred as above, will total $11,619 for deposit in above fund, this being the amount of bond interest due on November 1st, on $387,300 bonds in hands of public."

The check referred to in this letter was in the following form:

"INTERSTATE UTILITIES COMPANY,

DR To          Coeur d'Alene Bank & Trust Company,
               Coeur d'Alene, Idaho.

Oct. 29—For deposit in Interest Fund, this Company for
         Bond Coupons due Nov. 1, I. U. Co. bonds, 2nd
         issue ........................................$7,015.50

Void if above portion is detached.

Approved for Payment:          Certified as Correct:
(Signed) JOHN F. DAVIES, .         (Signed) C. C. LESTER,
                Vice-President.                      Auditor.

RECEIVED of The Interstate Utilities Company........$7,015.50
                                                     in full of
                                                   above acc't.

This receipt duly executed, after
   having been properly approved
   and certified, becomes a check      COEUR D'ALENE BANK &
   upon the funds of the com-            TRUST CO.,
   pany on deposit with                  (Signed) C. S. HAMMER.
      EXCHANGE NATIONAL
      BANK
         Spokane, Washington.
               Place of Payment ————.   Date 10–30–1920."

It was also shown that pass-books were issued upon these various accounts, and were balanced from time to time upon request.

The form of receipt used with the approval of the Utilities Company for making payments from one of the funds involved in this case is as follows:

| | |
|---|---|
| Certified and approved THE INTERSTATE UTILITIES COMPANY, (Signed) JOHN F. DAVIES, General Manager. | RECEIVED OF THE INTERSTATE UTILITIES COMPANY<br><br>In consideration of interest due for month of April, 1920, on Exchange of Bond No. 1 of the Interstate Telephone Company, Limited, for Bond No. —— of the Interstate Utilities Company, issue of May 1, 1919.<br><br>By ———— Bondholder $5.00 **FIVE DOLLARS** Dollars.<br><br>This receipt duly executed, after having been properly approved and certified, becomes a check upon the funds of the company on deposit with ————————,<br>Bondholder.<br>Place —— Date ——<br>THE COEUR D'ALENE BANK & TRUST CO.,<br>Coeur d'Alene, Idaho. |

Deposits in banks were formerly classified as general and special. When a general deposit was made the title to the money deposited passed to the bank, and the relationship of debtor and creditor resulted from the transaction. When a special deposit was made the bank became merely a bailor, charged with the duty of safekeeping the deposit and returning it to the person entitled thereto. Growing out of the freedom of contract allowed to both the depositor and those engaged in the banking business, a third class of deposits has been recognized by some authorities which may be designated as a deposit for a special purpose. (7 C. J. 631.) In the case of the latter class of deposits the money deposited

is commingled with the general assets of the bank, but the bank acts as agent for the depositor. A fiduciary relationship arises between the depositor and the bank, similar to that existing between principal and agent. (See *Southern Exchange Bank v. Pope,* 152 Ga. 162, 108 S. E. 551; *Peak v. Elliott,* 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499.) As between the parties when such an arrangement is made, the general title to the deposit does not pass to the bank, and although it is not contemplated that the deposit will be kept intact and returned to the depositor, or delivered to the person for whose benefit it was made, yet it is in effect but another form of a special deposit. Some transactions between depositors and a bank do not classify into any of these classes. In such cases the courts give effect to the contract, and either enforce it or grant damages for its breach according as one remedy or the other may be appropriate.

In the case at bar, the bank having become insolvent and its affairs having been placed in the hands of a receiver, the matter turns upon the question as to whether or not the deposit was a general one, title to which passed to the bank.

"Deposits of money made in a bank in the ordinary course of business are presumed to be general, and the burden of proof is on the depositor to overcome such presumption by showing that the deposit was made under such stipulations or directions as to constitute it a special deposit." (*Bank of Blackwell v. Dean,* 9 Okl. 626, 60 Pac. 226.)

"A bank deposit is subject to any agreement which the depositor and the banker may make as to it, so long as the rights of third parties are not injuriously affected." (*Shopert v. Indiana Nat. Bank,* 41 Ind. App. 474, 83 N. E. 515.)

The particular method of bookkeeping employed by the bank, unless brought to the knowledge of the Utilities Company, would not be controlling in this case. (*Missouri Pac. P. R. Co. v. Cont. Nat. Bank,* 212 Mo. 505, 111 S. W. 574, 17 L. R. A., N. S., 994.) Nor would the statements of the officers of the bank that it had never received special deposits be controlling, since under the circumstances of this

case such statements expressed merely the conclusion of the persons making them.

We are of the opinion, however, that the correspondence above referred to, and the forms of vouchers and receipts used, together with the fact that pass-books were issued and accepted covering these deposits, were sufficient to bring home to the Utilities Company the fact that the bank was treating these various deposits as general deposits. In the letter of May 1, 1920, the cashier of the bank refers to the accounts carried in his bank, and asks to which account the check is to be credited. This letter is not ambiguous, and, as we understand it, can have no other meaning than that the cashier understood that the accounts were to be handled and were being received in the usual manner of conducting a banking business, and that upon charging the amount to one of the accounts carried in the bank the depositor was to become a creditor of the bank. The Utilities Company's letter of May 4th could convey no other meaning to the bank than that it acquiesced in the method adopted by the bank in handling these accounts. That letter speaks of the different accounts in the bank. It is true that in that letter the word "fund" is used several times, but it is apparent that the words "fund" and "account" are used interchangeably and synonymously. It is also true that the letters of the Utilities Company stated the purpose for which the deposits in controversy were being made. They did not, however, convey to the bank any intimation that the Utilities Company was making a special deposit, or was intending to retain title to the funds in question. The receipt referred to above, approved by the Utilities Company, contains the following: "This receipt duly executed, after having been properly approved and certified, becomes a check upon the *funds* of the company on deposit with the Coeur d'Alene Bank & Trust Co." While the check referred to, if standing alone, might be interpreted as calling for a deposit for a special purpose for the benefit of the coupon holders, yet this check must be construed together with the letter transmitting it, and both must be construed in connection with

the previous correspondence. When all are construed to-
gether we think it is clear that the bank did not understand
that it was receiving the money as a special deposit, title to
which was to remain in the Utilities Company, or agree to
accept it as such.

If a bank accepts a deposit from A, under an agreement
to pay it to B, the contract is one for the benefit of B. It
has been held that such a contract creates a trust relation-
ship in favor of B, and that in case of insolvency of the
bank the trust relationship will be recognized and B is en-
titled to recover the trust fund if it can be traced into the
assets of the bank. (*Woodhouse v. Crandall,* 197 Ill. 104,
64 N. E. 292, 58 L. R. A. 385.) We think this rule is cor-
rect if B did not consent that the deposit should be con-
sidered as one for his credit. The evidence in this case, as
we construe it, fails to show a contract which gave the hold-
ers of the coupons any right of action against the bank. On
the contrary, the coupons were treated the same as checks
upon the bank and were credited to the proper account.

We have been cited to few, if any, cases which are in
point upon the facts. The cases of *State Building & Sav-
ings Assn. v. Mechanics' Savings Bank & Trust Co.* (Tenn.),
36 S. W. 967, and *Mutual Accident Assn. v. Jacobs,* 141 Ill.
261, 33 Am. St. 302, 31 N. E. 414, 16 L. R. A. 516, are
somewhat analogous.

The judgment is reversed, with costs to appellants.

Budge and Dunn, JJ., concur in the conclusion reached.

McCarthy, J., dissents.

(December 4, 1922.)

ON REHEARING.

BUDGE, J.—Upon application of respondent, a petition for rehearing was granted in this case, and it was again argued, submitted and taken under advisement. We have carefully re-examined the entire case and with the exception of the matter to which attention will be hereafter directed, we find no reason which would justify us in reaching a different conclusion than that arrived at in the former opinion.

Counsel for respondent has kindly called to our attention a slightly inaccurate statement in the former opinion, wherein it is stated: "By the terms of these bonds and trust deeds, the respondent; Interstate Utilities Company, was required to pay at the Hanover National Bank, New York, or at respondent, Coeur d'Alene Bank & Trust Company, on April 1st and October 1st of each year, six per cent interest on the amount of the outstanding bonds."

An examination of the trust deed discloses the fact that under the terms of that instrument the Interstate Utilities Company obligated itself to pay the interest coupons at the Coeur d'Alene Bank & Trust Company, while the Interstate Telephone Company, Limited, obligated itself to pay both principal and interest on its bonds at either the Hanover National Bank in the city of New York, or the Coeur d'Alene Bank & Trust Company in the city of Coeur d'Alene. However, we do not deem this inaccurate statement material.

Respondent also calls attention to the fact that in the majority opinion the following statement is made: "It was also shown that pass-books were issued upon these various accounts and were balanced from time to time upon request." And in another place this language was used: "Together with the fact that pass-books were issued and accepted covering these deposits."

While it may be true that pass-books were not issued covering all four accounts, they were issued covering at least two

of these accounts. The introduction of these pass-books was principally for the purpose of showing the system adopted by the bank in handling these accounts.

We find ourselves unable to adopt the theory advanced by respondent that the funds were deposited with the Coeur d'Alene Bank & Trust Company as trustee and not with said bank as a bank. The Coeur d'Alene Bank & Trust Company, if trustee, had no control over these funds, the trustee did not deposit them and had no authority to disburse them. The funds were deposited by the respondent company and paid out upon its order. The respondent company gave neither to the trustee nor to the Coeur d'Alene Bank & Trust Company direct or any instructions to the effect that these funds were deposited with the bank as a special deposit. As we understand the record in this case, the bank received these funds as a general deposit and treated them as such. Both the conduct of the bank and respondent, as shown by their correspondence, to our minds, clearly shows that there was no contract of special deposit. Even though the company may have understood that these funds were being deposited as a special deposit, it is clear that the bank had no such understanding. In order to establish a special deposit, it was incumbent upon respondent to prove by a preponderance of testimony that such a contract of special deposit was entered into. Proof of a unilateral contract does not establish a special deposit. Nor do we think that a deposit of funds in a bank, intended by the depositor to be used for a specific purpose, in the absence of competent proof that it was deposited and accepted by the bank as a special deposit, amounts to anything more than a general deposit.

The case of *Bank of Blackwell v. Dean*, 6 Okl. 626, 60 Pac. 226, correctly defines a general and special deposit in the following language: "A general deposit is one which is to be repaid on demand in money and the title to the money deposited passes to the bank. A special deposit is one in which the depositor is entitled to the return of the identical thing deposited, and the title remains in the depositor."

Deposits of money in the ordinary course of business are presumed to be general and the burden of proof is on the depositor to overcome such presumption by proving that the deposits were made under such stipulations and directions as to constitute them special deposits as distinguished from general deposits, and in the absence of such stipulations such deposits become a part of the bank's general funds. The bank becomes the owner of the fund, the depositor its creditor.

In the course of the opinion last cited it is held that: ". . . . if persons desire to make deposits special and take them out of the ordinary and usual course of business they must expressly stipulate or direct to that effect."

An examination of the case of *Hitt Fireworks Co. v. Scandinavian American Bank of Tacoma et al.,* 114 Wash. 167, 195 Pac. 13 (relied upon by respondent), and upon a second appeal, 209 Pac. 680, discloses an entirely different state of facts than appear in the record before us. The facts in that case established an express stipulation or contract between the parties whereby it was agreed that the money deposited should be kept as a special fund for a specific purpose. It was only in consideration of these express stipulations that the court held this to be a special deposit for a specific purpose.

The four accounts of respondent with the bank were at all times subject to respondent's control for the payment of its checks, its interest coupons or the difference between the bonds of the Interstate Telephone Company, Limited, and the bonds of the Interstate Utilities Company. At least in one instance the funds of one account were transferred to another in order to meet a certain contingency. Each month statements were sent to respondent, as is the usual practice in ordinary banking, and such pass-books as were issued were balanced. The funds which the respondent now seeks to impress as a trust fund and have paid to it as a preferred creditor were commingled with the general funds of the bank and constituted a part of its assets.

The handling of these funds by the bank in the manner shown, when considered in connection with the correspondence that passed between the bank and respondent, justifies the conclusion that the deposit was general and not special. This being true, the respondent became one of the general creditors of the bank and as such entitled to prorate only upon the same basis with its other general creditors.

Rice, C. J. and Dunn, J., concur.

McCarthy and Lee, JJ., dissent.