(September 26, 1925.)

MRS. GEORGE T. BACON, Appellant, v. STATE BANK OF KAMIAH, a Banking Corporation, E. W. PORTER, the Commissioner of Finance of the State of Idaho, and E. SCOTT, Agent for Said Commissioner, Respondents.

[240 Pac. 194.]

BANKS AND BANKING — GENERAL AND SPECIAL DEPOSITS DEFINED — ACTIONS TO RECOVER DEPOSITS—EVIDENCE—BURDEN OF PROOF AS TO SPECIAL DEPOSITS — MATTERS CONSIDERED — EFFECT OF NOTATIONS ON CHECKS AND OF DRAWING AGAINST DEPOSIT — KNOWLEDGE BY DEPOSITARY OF PURPOSE OF DEPOSIT — PRINCIPAL AND AGENT — KNOWLEDGE IMPUTED TO PRINCIPAL — OSTENSIBLE AUTHORITY OF AGENT — RIGHT AGAINST BANK'S RECEIVER TO RECOVER TRUST FUND AS PREFERRED CLAIM—LIMITATIONS UPON.

1. A general bank deposit exists where the bank is given custody of the money deposited with the express or implied in-

Publisher's Note.

1. Special as distinguished from general deposit, see notes in Ann. Cas. 1913E, 45; Ann. Cas. 1918B, 390.

tention that the bank is not required to return the identical money but only its equivalent, in which case the legal title to the money passes to the bank. A special deposit is where the bank merely assumes charge or custody of the property without authority to use it; the depositor being entitled to receive the identical thing deposited, in which case the title remains with the depositor, and, if the subject is money, the bank has no right to mingle it with its own funds.

2. The burden is upon the depositor to show by a preponderance of the evidence that the deposit is special and not general.

3. That the regular course of banking was contemplated by the parties in part of the transaction is a fact to be considered in determining whether a particular deposit is general or special.

4. Notations on checks capable of being understood either as mere directions to an agent as to the purposes for which the money was to be used, or as limitations upon the agent's power to make a general deposit thereof, are not conclusive as to the character of the deposit authorized.

5. The kind of the deposit as well as its purpose must be specified in order to constitute it a special deposit.

6. The act of a depositor in drawing draft against her deposit in a bank *held* to be incompatible with her claim that it was a special deposit.

7. An agent's statement that a deposit would be placed on an earning basis is a sufficient notice to the principal that the funds would be placed on time deposit.

8. Where previous like transactions assented to by the principal have conferred upon the agent the ostensible authority to make a general deposit of the principal's funds, the principal is bound by the agent's acts within the limits of that ostensible authority.

APPEAL from the District Court of the Tenth Judicial District, for Lewis County. Hon. Miles S. Johnson, Judge.

Action to enforce preference payment of deposit as a trust fund. Judgment for respondents. *Affirmed.*

Fred J. Babcock and Cox & Martin, for Appellant.

Where money is left with a bank to be used for a particularly designated purpose, the title does not pass to the bank; under such circumstances the bank becomes a trustee and holds the money in a fiduciary capacity, and it is not

therefore a part of the general assets. (*State v. Bruce*, 17 Ida. 1, 134 Am. St. 245, 102 Pac. 831; *Russell v. Bank of Nampa*, 31 Ida. 59, 169 Pac. 180; *Fidelity State Bank v. North Fork Highway Dist.*, 35 Ida. 797, 209 Pac. 449, 31 A. L. R. 781; *Fralick v. Coeur d'Alene Bank & Trust Co.*, 36 Ida. 108, 210 Pac. 586, and 36 Ida. 118; *Anderson v. Pacific Bank*, 112 Cal. 598, 53 Am. St. 228, 44 Pac. 1063, 32 L. R. A. 479; *Miami v. Shutts*, 59 Fla. 462, 51 So. 929; *Shopert v. Indiana Nat. Bank*, 41 Ind. App. 474, 83 N. E. 515; *Covey v. Cannon*, 104 Ark. 550, 149 S. W. 514; *Kimmel v. Dickson*, 5 S. D. 221, 49 Am. St. 869, 58 N. W. 561, 25 L. R. A. 309; *Moreland v. Brown*, 86 Fed. 257; *McBride v. American R. & L. Co.*, 60 Tex. Civ. App. 226, 127 S. W. 229; *Capitol National Bank v. Coldwater Nat. Bank*, 49 Neb. 795, 69 N. W. 115; *Peak v. Ellicott*, 30 Kan. 156, 46 Am. Rep. 90, 1 Pac. 499; *Southern Exchange Bank v. Pope*, 152 Ga. 162, 108 S. E. 551; *Morton v. Woolery*, 48 N. D. 1132, 189 N. W. 232; *Hitt Fireworks Co. v. Scandinavian Bank*, 114 Wash. 167, 195 Pac. 13, 196 Pac. 629; *Re Interborough Consolidated Corp.*, 288 Fed. 334.)

"As a general rule the bailor may recover possession of the subject matter of the bailment, or its value, from any person who has acquired possession by a wrongful act of the bailee; . . . . and this right of the bailor may be enforced even against one who purchases from the bailee in good faith and without notice of the bailor's title, the principle being that the bailee cannot transfer a greater right or a better title than he himself possesses." (*Central Nat. Bank of Baltimore v. Connecticut Mutual Life Ins. Co.*, 104 U. S. 54, 26 L. ed. 693; *McBride v. American Lighting Co.*, 60 Tex. Civ. App. 226, 127 S. W. 229.)

Randall & Becker, for Respondents.

In order to impose her claim of a special deposit, and thus a trust fund, on the State Bank of Kamiah, the plaintiff must show personal relations with such bank. (7. C. J. 630, 631; *Fralick v. Coeur d'Alene Trust Co.*, 36 Ida. 108, 210 Pac. 586.) Even if plaintiff can show a trust fund,

she cannot recover in this case.   (*Bellevue State Bank v. Coffin,* 22 Ida. 210, 125 Pac. 816; *Russell v. Bank of Nampa,* 31 Ida. 59, 169 Pac. 180; *Bradley v. Chesebrough,* 111 Iowa, 126, 82 N. W. 472.)

Plaintiff's own conduct and understanding negatives all claim of a special deposit.

BUDGE, J.—The parties to this litigation entered into a stipulation of facts from which the trial court made findings of fact, conclusions of law and entered its decree.   Only such of the facts appearing from the stipulation are set forth as are necessary to a proper determination of the case.

Prior to April 8, 1921, the State Bank of Kamiah was doing a general banking business.   On April 8, 1921, it closed its doors, and the commissioner of finance of the state of Idaho took charge of the bank for the purpose of winding up its affairs.   The appellant gave written notice to the commissioner on May 5, 1921, of her claim to $6,000 as a trust fund, and on August 27th filed a claim in due form asserting a preference for this $6,000 under subdivision 2 of section 13, chap. 42, Session Laws 1921, as a debt due her by the State Bank of Kamiah as a trustee or fiduciary. On October 30th the commissioner notified appellant that her claim had been given priority of subdivision 3 of the statute, as a debt due a depositor.   Her claim for preference is to be decided upon the following stipulated facts.

On December 20, 1920, appellant turned over to George H. Waterman, of Pomeroy, Wash., certain valid bank checks aggregating $6,500 and described as follows: Check No. 12065, of West & Wheeler, in the sum of $5,022.90, dated November 27, 1920, drawn on National Bank of Commerce, Seattle, Wash., payable to the order of Mrs. George T. Bacon, and indorsed by her to George H. Waterman "only for use on loans"; check of Mrs. George T. Bacon dated December 14, 1920, amount $1,400, drawn on Evans State Bank of American Falls, Idaho, payable to the order of George H. Waterman, upon which was written "for loan on J. F. Kosanki home only $2,500.00"; check of Mrs.

George T. Bacon dated December 14, 1920, amount $77.10, drawn on State Bank of Kamiah, payable to the order of George H. Waterman, upon which was written "to balance for a $4,000 loan at 8% from date at Pomeroy, Wash." The above checks were all indorsed by Waterman and in due course were delivered to the Federal Reserve Bank of San Francisco, Spokane, Wash., branch, with instructions to credit the proceeds thereof to the First National Bank of Clarkston, Wash.; the latter bank was instructed by Waterman to credit the State Bank of Kamiah with the $6,500. This fund of $6,500 was received by the State Bank of Kamiah in the way of a credit from the First National Bank of Clarkston, Wash., on December 21, 1920. On December 20, 1920, Waterman acknowledged receipt of the $6,500, stating "with which amount I am to take up the mortgage at American Falls and place a $4,000 loan for you at 8% interest payable semi-annually. The $4,000 will be placed on an earning basis immediately and you know I will do all I can to line up the $2,500 loan according to your wishes."

From December 21, 1920, on, the total fund of $6,500 was handled by the State Bank of Kamiah in accordance with the following custom: for some time prior to December 14, 1920, appellant had deposited funds with the State Bank of Kamiah for use only on loans; the amounts so received would be placed by the bank on deposit, evidenced by time certificates payable to Mrs. George T. Bacon, drawing interest at the rate of five per cent per annum, which interest was paid to her for the actual time the money was on deposit; when a suitable loan was found the certificates were canceled and the loan made. This custom was generally known among the officers of the bank, but all handling of such funds and the making of the loans were done by Waterman. Pursuant to the custom, a safe deposit box was assigned to Mrs. George T. Bacon in the State Bank of Kamiah, to which Waterman had access at all times and in which he kept all of Mrs. Bacon's papers relating to the bank. It was known among the officers of the bank that

$4,000 of the amount was to be used for procuring a loan to one Nichols which had already been made and which was then held by the Spokane and Eastern Trust Company of Spokane, Wash., as collateral to certain bills payable of the State Bank of Kamiah, and that the remaining $2,500 was to be used for completing a loan to one J. F. Kosanki at American Falls.

On January 28, 1921, Mrs. George T. Bacon drew on Farmers National Bank of Pomeroy, Wash., a customer's draft in the sum of $500 payable to the order of the Citizens' Bank of Pocatello, Ida., with a notation thereon, "loan to J. F. Kosanki"; this draft was forwarded to State Bank of Kamiah and paid by said bank March 29, 1921, leaving a balance of said fund in the State Bank of Kamiah of $6,000. On March 28, 1921, because it was expected that the Kosanki loan would be made in the near future, the balance of $2,000 was placed on general deposit.

At all times between December 14, 1920, and April 8, 1921, George H. Waterman was president of the State Bank of Kamiah, and was also president or other officer of the Farmers National Bank of Pomeroy, and of the First National Bank of Clarkston.

Mrs. Bacon had no knowledge until after April 8, 1921, that said sum of $6,000 was on deposit in the State Bank of Kamiah, either on certificate of deposit or otherwise. She never received a certificate of deposit or pass-book showing that any part of the funds had been deposited to her credit in said State Bank of Kamiah. There was a certificate of deposit for $4,000 dated December 21, 1920, in a tin box belonging to appellant in the State Bank of Kamiah, but appellant had no knowledge of when it was made or when or by whom it was placed there. Appellant never authorized Waterman or other officers or employees to place said sum or any part of the said $6,500 on deposit to her credit, but her instructions were to make a loan of $4,000 with interest at eight per cent per annum, payable semi-annually, and to make a loan of $2,500 on the residence of J. F. Kosanki at American Falls.

The trial court adopted as its findings of fact the facts stipulated by the parties, and from them made the following conclusions of law: "That the deposit of the plaintiff (appellant) in the State Bank of Kamiah consisting originally of $6,500, and appearing herein as a balance of $6,000, was a general deposit and not a special deposit; that the ruling of the commissioner of finance in classifying the plaintiff's claim under Subdivision 3 of Section 13, Chapter 42, of the Laws of 1921, should be sustained, and that the claim of plaintiff should be denied."

Session Laws 1921, chap. 42, sec. 13, in part provides:

"The order of payment of the debts of a bank or trust company liquidated by the commissioner hereunder shall be as follows:

"(1) The expenses of liquidation . . . .

"(2) Debts due by the bank or trust company as trustee or other fiduciary, or other claims of like character;

"(3) Debts due depositors . . . . ; "

The sole question here presented is whether, under the facts stipulated, appellant's claim should be given priority of subdivision 2 or of subdivision 3 of this statute. If the facts show that the deposit was made under such circumstances as to create the relation of bailor and bailee between appellant and the bank, appellant's claim should be classed under subdivision 2. If, however, the deposit created the relation of debtor and creditor, it would come under subdivision 3.

The case of *People v. California Safe Deposit & Trust Co.*, 23 Cal. App. 199, 137 Pac. 1111, clearly defines a general and a special deposit in the following language:

"A general bank deposit exists where the bank is given custody of the money deposited with the express or implied intention that the bank is not required to return the identical money, but only its equivalent, in which case the legal title to the money passes to the bank. A 'special deposit' is where the bank merely assumes charge or custody of the property without authority to use it; the depositor being entitled to receive the identical thing deposited, in which

case the title remains with the depositor, and, if the subject is money, the bank has no right to mingle it with its own funds.''

This court in the case of *Fralick v. Coeur d'Alene Bank & Trust Co.* (on rehearing), 36 Ida. 108, 210 Pac. 586, made the following observations:

''In order to establish a special deposit it was incumbent upon respondent to prove by a preponderance of the testimony that such a contract of special deposit was entered into. Proof of a unilateral contract does not establish a special deposit. Nor do we think that a deposit of funds in the bank, intended by the depositor to be used for a special purpose, in the absence of competent proof that it was deposited and accepted by the bank as a special deposit, amounts to anything more than a general deposit.''

''Deposits of money in the ordinary course of business are presumed to be general, and the burden of proof is upon the depositor to overcome such presumption by proving that the deposits were made under such stipulations and directions as to constitute them special deposits as distinguished from general deposits, and in the absence of such stipulations such deposits become a part of the bank's general funds. The bank becomes the owner of the fund, the depositor its creditor.''

The rule stated by this court in the case last cited is that a deposit intended by the depositor for a specific purpose does not amount to anything more than a general deposit unless it is deposited and accepted by the bank as a special deposit, and that the burden is upon the depositor to prove that the contract made it a special deposit. Appellant claims that under the facts and circumstances appearing in the present case, the deposit was special. We shall now examine the stipulated facts to determine whether or not the appellant has met the burden of proof.

In the first instance, appellant sent to Waterman checks totaling $6,500 drawn on three different banks. She intended that at some time in the future this should be paid out by Waterman, $4,000 on one loan and $2,500 on another.

The checks not being in the amounts of the respective loans, Waterman was authorized to reduce the money represented by the checks into his possession. In doing this he took the usual and ordinary course of putting the checks through the banks for collection, credit therefor ultimately reaching the State Bank of Kamiah for plaintiff's account. All three of the checks were on banks other than the one located at Pomeroy, Wash., and two of the checks were on banks at distant points. This is a circumstance indicating that in the beginning of the transaction the ordinary and usual course of banking was contemplated.

Appellant asserts that the directions contained in her notations upon the checks made their deposit a special one. These notations are as follows: on the West & Wheeler check, "only for use on loans"; on the Evans State Bank check, "for loan on J. F. Kosanki home only $2,500"; on the State Bank of Kamiah check, "to balance for a $4,000 loan at 8% from date at Pomeroy, Wash." These directions are · equivocal; they may be understood either as mere instructions to Waterman as to the purpose for which the money was forwarded to him, or as a limitation upon the character of the deposit he could make of the checks. Since the directions are not conclusive upon the question of general or special deposit, the remainder of the evidence becomes decisive of the case.

Further evidence on behalf of appellant, as stipulated, shows that the officers and employees of the State Bank of Kamiah knew that $4,000 of the fund was to be used in procuring a loan to one Nichols, and the remainder for a loan to one Kosanki, and that Waterman was an officer of the Clarkston, Pomeroy and Kamiah banks. This shows nothing more than that the banks knew to what purpose the appellant ultimately intended to apply the money. It does not show that the money or checks representing the money were delivered to the bank with the present directions that it should pay the proceeds over to third persons without mingling them with the general funds of the bank. In *Cabrera v. Thannhauser & Co.,*

183 Cal. 604, 192 Pac. 45, the California court, in sum-
marizing. its conclusions regarding special deposits, said:

"Even if the reason for the remittance be known to the
depositary to be the payment of an obligation owed by the
depositor to a third person, nevertheless the depositor must,
at the time of making the deposit, specify that the funds
are to be kept apart from other moneys of the depositary
and devoted only to the payment of the depositor's debt."

In other words, the nature of the deposit, as well as its
purpose, must be specified in order to constitute it a special
deposit.

Part of the evidence against appellant is that while the
money was on deposit she drew a draft in the sum of
$500 against the deposit, or against the bank in which
she supposed the money was deposited, marking on the
draft that it was to be charged against the money in-
tended for the Kosanki loan. This fact makes it appear
that the deposit was made with the intention by the ap-
pellant of some time thereafter applying the money in a
particular manner, rather than with any direction to the
bank as to its present application. Appellant's exercise
of control over the fund by drawing against it indicates
that the bank's contract as to this deposit was the same
as to any ordinary deposit, viz., to repay it in money
on the demand or order of the depositor.

Another point against appellant's contention is that
Waterman's acknowledgment of receipt stated that the
"$4,000 will be placed on an earning basis immediately."
What he meant by "earning basis" and what appellant
understood therefrom is explained by the further stipula-
tion that for some time prior to December 14, 1920, ap-
pellant had been accustomed to deposit funds with the
State Bank of Kamiah for use only on loans, and that the
amounts so received would be placed by the bank on de-
posit, evidenced by a certificate of deposit drawing interest
which was paid to her for the actual time the money was
on deposit, and when a suitable loan was found the certifi-
cates were canceled, and the loan made. This course of
dealing was known to the bank officers, but the handling

of the funds and the making of the loans were done by Waterman.

It is true that it is stipulated that appellant had no knowledge that the sum of $6,000 was on deposit, either on certificate of deposit or otherwise, that she never received any certificate of deposit or pass-book showing that any part of the funds had been deposited to her credit in the State Bank of Kamiah. And it is true that it is also agreed that she never authorized Waterman or other officers of the bank to place the $6,000 to her credit, and that her instructions were to make the two loans mentioned. Had the remittance to Waterman in the first place been by checks totaling the respective sums of $4,000 and $2,500, it would be a circumstance of some weight in determining whether she authorized a deposit to her credit. Waterman was her agent, and she must be charged with knowledge of the deposit. She must also be charged with knowledge of the ostensible authority conferred upon Waterman by their previous dealings. The $6,000 was mingled with the general funds of the bank according to the custom theretofore carried out between her and Waterman. She had notice that former deposits had been mingled with the funds of the bank, as it is stipulated that "she had theretofore made like deposits and received interest which was paid to her for the actual time the money was on deposit." She had actual notice that the present deposit would be handled in the same way as previous deposits, as she was notified on December 20, 1920, that part of the money would be placed on an earning basis immediately, and that the $2,500 loan would be made according to her wishes. To this arrangement, made some three and a half months before the bank failed, appellant did not see fit to object.

We are therefore of the opinion that the appellant has not proved by a preponderance of the evidence that the contract was one of special deposit.

From what has been said, it follows that the trial court did not err in holding that the deposit was general, and not

special. The judgment should therefore be *affirmed*, and it is so ordered. Costs are awarded to respondent.

William A. Lee, C. J., and Taylor, J., concur.

GIVENS, J., Concurring Specially.—I concur in the conclusion reached on the ground that the stipulation of facts is insufficient to sustain the burden resting upon appellant to show that there was a special deposit.

Wm. E. Lee, J., concurs with Givens, J.