## NORTHERN SUGAR CORPORATION v. THOMPSON.

(Circuit Court of Appeals, Eighth Circuit. May 27, 1926.)

No. 7145.

**1. Banks and banking** ⟐80(6)—**Sugar corporation's deposit in bank, against which only "beet pay roll" checks were drawn; held not a special deposit, as affecting corporation's right to preferred claim against receiver of bank.**

Account of sugar corporation with bank, against which "beet pay roll" checks only were drawn, and in which only sufficient money to meet such checks was deposited, *held* not a special deposit for a specific purpose, as affecting sugar corporation's right to preferred claim against receiver of bank.

**2. Banks and banking** ⟐80(6).

As respects priorities, whether a deposit in a bank is general or special depends on contract resulting from mutual understanding and intention of parties.

**3. Banks and banking** ⟐80(6).

As respects priorities, deposit in ordinary course of business is presumed general, and not special.

**4. Banks and banking** ⟐153.

Where money is deposited for a specific purpose only, title does not pass, and relation between depositor and bank is that of principal and agent.

Appeal from the District Court of the United States for the District of Minnesota; Andrew Miller, Judge.

Action by the Northern Sugar Corporation against Mackey J. Thompson, as receiver of the Wells National Bank, of Wells, Minn. Decree for defendant, and plaintiff appeals. Affirmed.

J. E. Dorsey, of Minneapolis, Minn. (Lancaster, Simpson, Junell & Dorsey, of Minneapolis, Minn., on the brief), for appellant.

John F. D. Meighen, of Albert Lea, Minn., and Frank E. Putnam, of Blue Earth, Minn. (Putnam & Carlson, of Blue Earth, Minn., and Meighen, Knudson & Sturtz, of Albert Lea, Minn., on the brief), for appellee.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. [1] This is an action by the Northern Sugar Corporation against Mackey J. Thompson, as receiver of the Wells National Bank, of Wells, Minn., to secure the allowance of a preferred claim in the sum of $29,956.79.

The bank having become insolvent, Mackey J. Thompson was appointed as its receiver by the Comptroller of the Currency, on February 26, 1924.

The sugar corporation was engaged in the manufacture of beet sugar at Mason City, Iowa. In the years 1922 and 1923, it entered into contracts with farmers residing in the vicinity of Wells, Minn., to grow sugar beets and to sell such beets to the sugar corporation.

Prior to July, 1922, the sugar corporation had made advances to certain of the farmers and had taken their notes therefor. On July 27, 1922, Mr. Groom, treasurer of the sugar corporation, took up with Mr. Oleson, president of the bank, the question of discounting certain of these notes with the bank. Arrangements were made for the discounting of the notes and the depositing of the proceeds derived therefrom in the bank to the credit of the sugar corporation in what was to be known as the "treasurer's account." Oleson inquired as to the possibility of the sugar corporation opening an additional account with the bank. Groom replied that the sugar corporation might be willing to disburse its beet pay rolls through the bank, and explained to Oleson that the method of handling the beet pay rolls would be substantially as follows: That payments would be made about the middle of the months of November, December, January, and February following the beet-growing season; that the sugar corporation would make up a pay roll of the net balance due farmers for beets; that upon determination of this amount the sugar corporation would deposit with the bank a fund equal to the total amount of the pay roll, and would disburse the same by checks payable to the farmers and others, which checks would be sent out at about the same time as the pay roll deposit; and that these checks would be lithographed across the face "Beet Pay Roll," and would be signed by two officers of the sugar corporation other than the officers who would sign checks drawn on the "treasurer's account."

Thereafter, at regular intervals, the sugar corporation forwarded to the bank its check, to be deposited to the credit of the sugar corporation in the beet pay roll account. The first check was deposited November 18, 1922; it was accompanied by the following letter:

"We also inclose check for $1,684.28 which *please place to the credit of Northern Sugar Corporation* 'beet pay roll' account, and against which fund checks will be issued direct to the farmers at Wells, Bricelyn, Frost, and Marna, as net payments due for beets delivered through October 20th" (Italics ours.)

Attached to the check was a stub, upon which appeared the following memorandum:

"To cover 'beet pay roll' checks for November 20, 1922, 'beet pay roll' as per beet pay roll record—$1,684.27."

Checks, accompanied by letters, containing substantially the same instructions, to which were attached stubs setting forth similar memoranda, were deposited on December 21, 1922, December 23, 1922, January 20, 1923, November 20, 1923, December 19, 1923, January 14, 1924, and February 13, 1924, respectively.

At the time the bank closed, there remained in the beet pay roll account $29,956.79.

It was the practice of the sugar corporation, at or about the same time as the beet pay roll was made up and the deposit made in the bank, to issue checks equal to the total amount of such deposit payable to farmers who had sold beets to the Sugar Corporation, to beet laborers, to holders of chattel mortgages on the beets, and to other persons to whom the farmers had given orders for the payment of moneys due them for beets. These checks had lithographed across their face "Beet Pay Roll," and were signed by Mr. Winter and Mr. Groom, the officers of the sugar corporation, who, Groom had advised the bank, would sign the checks drawn on this account.

Groom testified relative to this account as follows:

"There was no thought that the check deposited would physically remain in the Wells

bank. I did not concern myself very much about how the Wells bank handled them. That was for the bank to decide. We expected the bank would have at all times sufficient cash on hand in this fund to meet any checks that might be presented against it. As to how the bank handled the matter on their books, or the internal method they might use was not a matter of concern to me, as long as they had sufficient cash there to meet these outstanding checks as presented. I expected the 'beet pay roll' checks, when presented, would be paid promptly, the same as any check that I might issue against a bank in which I had an account. The balance in the 'beet pay roll' account shifted from day to day. * * *

"Checks on this account were issued to others than beet growers or laborers only upon written receipt of an order for payment to some other person. * * *

"If a beet grower gave an order to somebody else, we would issue the check to the one receiving the proper order, without notifying the Wells National Bank in any way, and acting upon our own initiative. * * * And we would from time to time insert the name of a chattel mortgage holder or lienholder or holder of an order as the payee in a 'beet pay roll' check upon our own initiative, without taking it up with the bank. That happened quite frequently. * * * So far as the dating of the checks upon the 'beet pay roll' account are concerned, sometimes they would bear the same date that the deposits were sent, and sometimes they would not, but usually the 'beet pay roll' checks sent to the farmers bore the same date as the deposit checks.

"In each case the plaintiff advised the bank it had forwarded the checks to the growers in the amount of the deposit being made with the bank, but did not advise the bank as to what specific growers or laborers were to be paid. No advice was sent to the bank as to what checks were being drawn in favor of the beet laborers as differentiated from the checks drawn to the beet growers. * * * From the time of the first deposit on the 'beet pay roll' account to the close of the bank in February, 1924, there was continuously an amount to the credit of the plaintiff in that account. The bank was not required to ascertain that the persons presenting checks were in fact beet growers or laborers, but the plaintiff expected the checks to be paid to the payee, whether he happened to be a beet grower or laborer, or not. If the plaintiff had given a check on the 'Beet Pay Roll' account to a merchant in Minneapolis in payment of a bill of goods, the plaintiff would expect such check to be honored by the Wells bank. If the plaintiff had given a check on the 'beet pay roll' account for legal services, the plaintiff would have expected the bank at Wells to honor that check. No checks were, however, in fact drawn upon this account, except in payment of pay roll items. The account was placed with the Wells National Bank for the purpose of paying the farmers and laborers for their beets, and for no other purpose, and no checks for any other purpose were ever drawn against that fund."

The trial court denied the claim of the sugar corporation to a preference, and allowed it a general claim for the sum of $29,256.79, and entered its decree accordingly.

The sugar corporation has appealed.

The contention of the sugar corporation is that the deposits were made to pay specific debts of the sugar corporation; that the title thereto did not pass to the bank, but remained in the sugar corporation; that, in the handling of such deposits, the relation between the sugar corporation and the bank was that of principal and agent; and that the portion of such deposits remaining in the bank at the time it was closed by the Comptroller of the Currency constituted a trust fund, which the sugar corporation was entitled to recover.

The contention of the receiver is that such deposits were general deposits, and created the relation of debtor and creditor between the bank and the sugar corporation.

[2,3] Whether a deposit in a bank is general or special depends upon the contract resulting from the mutual understanding and intention of the parties at the time such deposit is made. Fogg v. Tyler, 109 Me. 109, 82 A. 1008, 39 L. R. A. (N. S.) 847, Ann. Cas. 1913E, 41; 3 R. C. L. § 146, p. 517. But a deposit made in the ordinary course of business is presumed to be general, and the burden of proof is upon the depositor to overcome such presumption by proving that the deposit was made upon such terms and conditions as to constitute it a special deposit or a deposit for a specific purpose, as distinguished from a general deposit. Craig v. Bank of Granby, 210 Mo. App. 334, 238 S. W. 507, 509; Fralick et al. v. Cœur d'Alene Bank & Trust Co. et al., 36 Idaho, 108, 210 P. 586, 588; Washington Shoe Mfg. Co. v. Duke, 126 Wash. 510, 218 P. 232, 233, 234, 37 A. L. R. 611; First National Bank of Sharon v. City National Bank of Kan-

sas City, 102 Mo. App. 357, 76 S. W. 489; Bank of Blackwell v. Dean, 9 Okl. 626, 60 P. 226; Sheridan v. U. S. (C. C. A. 9) 236 F. 305, 309, 149 C. C. A. 437; Minard et al. v. Watts (C. C.) 186 F. 245; Bank of the Republic v. Millard, 77 U. S. (10 Wall.) 152, 155, 19 L. Ed. 897; 3 R. C. L. p. 517, § 146; Morse, Banks & Banking, vol. 1, § 186; 7 C. J. § 306, p. 630.

[4] Where the depositor, at the time a deposit is made, enters into an understanding and agreement with the bank that the money deposited is for a specific purpose, and for that alone, as funds deposited to pay a particular note, draft, or check, such deposit partakes of the nature of a special deposit, the relation between the depositor and the bank is that of principal and agent, and the title to the deposit remains in the depositor. Fralick v. Cœur d'Alene Bank & Trust Co., 36 Idaho, 108, 210 P. 586, 588; Morton v. Woolery et al., 48 N. D. 1132, 189 N. W. 232, 24 A. L. R. 1107; First National Bank of Ashland v. Prickett, 19 Ala. App. 204, 95 So. 920; Eshbach v. Byers, 164 Ill. App. 449; Sawyers v. Conner, 114 Miss. 363, 75 So. 131, L. R. A. 1918A, 61, Ann. Cas. 1918B, 388; Payne et al. v. Burnett et al., 151 Tenn. 496, 269 S. W. 27, 39 A. L. R. 1125; Cotulla State Bank v. Herron (Tex. Civ. App.) 191 S. W. 154; Decatur Creamery Co. v. West Side Trust & Savings Bank, 213 Ill. App. 220; Paige v. Springfield Nat. Bank, 12 Ohio App. 196; Moreland v. Brown (C. C. A. 9) 86 F. 257, 30 C. C. A. 23; Montagu et al. v. Pacific Bank et al. (C. C.) 81 F. 602; notes, 24 A. L. R. 1111, and 39 A. L. R. 1138; 7 C. J. p. 631, § 307; Morse, Banks & Banking, vol. 1, § 185.

In the instant case, there was no agreement between the sugar corporation and the bank that the funds deposited to cover pay roll checks should be held by the bank as a special fund, separate and apart from other general funds of the bank, or that they should be treated by the bank in any way different from a general deposit. On this point Mr. Groom stated

"There was no thought that the check deposited would physically remain in the Wells bank. * * * We expected the bank would have at all times sufficient cash on hand in this fund to meet any checks that might be presented against it. * * * I expected the beet pay roll checks, when presented, would be paid promptly, the same as any check that I might issue against a bank in which I had an account."

The Sugar Corporation did not expect that the funds deposited in the beet pay roll account would be paid out to any particular payee, but to various classes of persons. The checks drawn on the pay roll account were payable to farmers, to laborers, to lienholders, and to persons holding orders. The bank was at no time advised what particular persons were entitled to such payments. The sugar corporation expected the bank to honor a check drawn by it on the pay roll account, regardless of who the payee might be, and regardless of the obligation in payment of which it was given. On this point, Mr. Groom testified:

"If plaintiff had given a check on the 'beet pay roll' account to a merchant in Minneapolis in payment of a bill of goods, the plaintiff would expect such check to be honored by the Wells bank. If the plaintiff had given a check on the 'beet pay roll' account for legal services, the plaintiff would have expected the bank at Wells to honor that check."

The letter accompanying the first deposit instructed the bank to place such deposit "to the credit of Northern Sugar Corporation." The same instruction accompanied the second, fourth, sixth, seventh, and eighth deposits. If it was understood and agreed between the sugar corporation and the bank that the deposits were to be for a specific purpose, and that the bank was to act as the agent of the sugar corporation in disbursing such deposits, then the title to the funds deposited would not have passed from the sugar corporation to the bank, and the bank would not have become the debtor of the sugar corporation to the extent of the funds deposited, and the sugar corporation would not have been entitled to have the funds deposited placed to its credit; that the sugar corporation did not intend the relation between it and the bank to be that of principal and agent, but rather the conventional relationship of creditor and debtor, which grows out of a general deposit, is indicated by the requests of the sugar corporation that the bank place the deposits to the credit of the sugar corporation.

It is not an uncommon practice to-day for the large corporate organizations to carry several different accounts in the same bank. These accounts might be properly called departmental accounts. In such accounts funds are deposited, and checked out to pay the obligations of a particular department. Thus, in a sense, these deposits are made for the purpose of paying a particular

class of obligations. But it is not the intention of the parties that the bank, in accepting such deposits, shall act as the agent of the corporation, but such deposits are intended to be general deposits. The purpose of the corporation in carrying such separate accounts is not to reserve title to the deposits in itself, but to keep the transactions of its several departments separate from each other, and to facilitate the keeping of its books and records. Fralick v. Cœur d'Alene Bank & Trust Co., supra; Craig v. Bank of Granby, supra; Noyes v. First National Bank of New York, 180 App. Div. 163, 167 N. Y. S. 288; Id., 224 N. Y. 542, 120 N. E. 870.

In view of the foregoing, we cannot say that the trial court erred in holding that the sugar corporation, having the burden of proof, failed under the evidence to overcome the presumption that the deposits were general deposits creating the relation of debtor and creditor.

The decree is therefore affirmed.