34656, 34673. PROPES *v.* TODD; and *vice versa.*

DECIDED DECEMBER 4, 1953.

*Franklin, Eberhardt & Barham,* for plaintiff in error.
*Moore & O'Berry,* contra.

QUILLIAN, J. W. C. Todd brought a trover action against Hoke S. Propes in the City Court of Douglas to recover a truck.

Propes filed an answer, in which he set up that the title to the truck was not in Todd but was in the Glidden Company, and in which he alleged that he held possession of the truck under the right of the Glidden Company.

Upon the trial of the case, the evidence showed that, on March 8, 1950, Hoke S. Propes purchased from McCann-Reid, Inc., an International truck, for which he agreed to pay $5,517, of which $4,137.48 was to be paid in deferred payments. This transaction was evidenced by a conditional-sale contract, by the terms of which Propes agreed to pay the balance of the purchase price in monthly instalments of $229.86 each. This conditional-sale contract was properly attested, duly recorded on March 29, 1950, and was transferred and assigned to International Harvester Credit Corporation. On April 21, 1950, Hoke S. Propes executed and delivered to W. C. Todd a bill of sale to secure debt, conveying the same International truck as security for the payment of an indebtedness of $1,040. This bill of sale to secure debt was purported to have been attested by M. H. Strickland, C. N. Todd, and Julian Minchew, Clerk of the Superior Court of Coffee County, Georgia. It was in fact attested only by M. H. Strickland and C. N. Todd. It was not signed in the presence of Julian Minchew, clerk of the superior court, nor was it acknowledged by Propes in the clerk's presence or probated in the manner provided by statute to entitle it to be recorded. The bill of sale was, however, recorded in the office of the Clerk of Coffee Superior Court on June 19, 1951. On August 22, 1951, at the request of International Harvester Credit Corporation, McCann-Reid, Inc., which was endorser on the contract of March 8, 1950, above mentioned, took up the said contract by paying to International Harvester Credit Corporation the then outstanding balance thereunder—the balance of the original purchase price of said truck. On the same date, August 22, 1951, a new conditional-sale contract was made up and executed by Hoke S. Propes to McCann-Reid, Inc., for a balance of $1,449.96, for the purpose of getting this balance financed with another finance company. This contract was duly attested, and was thereupon transferred and assigned by McCann-Reid, Inc., to Universal C. I. T. Credit Corporation. The contract and transfer were then duly recorded on September 12, 1951, in the office

of the Clerk of Coffee Superior Court. On January 8, 1952, this conditional-sale contract was duly transferred by Universal C. I. T. Credit Corporation to the Glidden Company. This bill of sale contained a power of sale, which authorized the holder of that instrument, in case of default by Propes in payments according to its tenor, to sell the truck at public or private sale. On January 21, 1952, the Glidden Company exposed the truck at what purported to be a public sale, in that the sale had been advertised and the truck was sold to the highest bidder, the Glidden Company buying under the provisions of the contract which permitted it to buy at its own sale. However, this sale was not had in strict conformity to the law of this State prescribing the manner of public sales, in that the sale was not had on a sale day, that is, the first Tuesday in a month.

Pursuant to that sale, a bill of sale from Propes, by his attorney in fact, conveying said truck to the Glidden Company, was duly executed, attested on January 21, 1952, and recorded on February 11, 1952. Thereafter, on the same day, the Glidden Company and Hoke S. Propes entered into an equipment rental agreement, by the terms of which Glidden Company rented or leased to Propes certain personalty, including said truck, for a stated sum per mile of use. Thereupon, the Glidden Company permitted Propes to take possession of said truck under the terms of said rental agreement. Thereafter, on April 23, 1952, W. C. Todd, claiming title to said truck under the provisions of the bill of sale to secure debt which he had received from Propes on April 21, 1950, filed against Propes this bail trover suit in the City Court of Douglas, wherein he sought to recover said truck or the value thereof. There was evidence that the Glidden Company, after it had had transferred to it the bill of sale from C. I. T. Corporation, but before it had exercised the power of attorney therein contained and brought the truck to sale, had actual notice of the existence of the bill of sale from Todd to Propes.

The trial resulted in a verdict and judgment for the plaintiff. Propes, the defendant, filed his motion for new trial and amended it, after which the court denied the amended motion, and Propes excepted to said ruling and brought the case to this court. By cross-bill of exceptions the plaintiff, Todd, excepts to the

denial of his oral motion to dismiss the answer filed by the defendant.

The evidence in the case was not sufficient to support the verdict. In order for the plaintiff to recover, it was necessary for him to show by the evidence that title to the truck involved in the case was in him. The defense filed by Propes, the defendant, that the title to the truck was not in the plaintiff, but in the Glidden Company was a good defense, and the grounds of the oral motion attacking the answer setting up this defense, the overruling of which is complained of in the cross-bill of exceptions, were without merit. Under the evidence, this defense was established. There were some conflicts in the testimony, but none on the really material issues in the case.

The real issue was whether or not the bill of sale made by the defendant, Propes, to the plaintiff, Todd, had priority over the bill of sale transferred by C. I. T. Corporation to the Glidden Company. There is no question that the bill of sale originally given to McCann-Reid Company, and by it transferred to International Harvester Credit Corporation and by that corporation transferred back to McCann-Reid Company, was given and recorded prior to the bill of sale to secure debt from the defendant to the plaintiff. Both instruments conveyed the same truck. The renewal of this paper in the hands of McCann-Reid Company did not affect this priority. Where an instrument required by the law of this State to be recorded on the public records is so recorded and thereafter is renewed by an instrument of the same nature, which renewal instrument is on the same day of its renewal recorded in the usual manner, and where it is the intention of the parties, both to the original instrument and to the renewal instrument, that the debt represented by the original instrument shall not be canceled but shall be brought forward in the renewal instrument, the renewed instrument does not lose priority over an instrument given after the original instrument of which it is a renewal. "It is a general rule that the question whether the taking of a new mortgage in place of a prior one amounts to an extinguishment thereof is one as to the intention of the parties, and that the acceptance by a mortgagee of a new mortgage, and his cancellation of the old one, does not amount to a payment or satisfaction and does not deprive him of his right to have the lien of the discharged mortgage

continued as against an intervening lien, in the absence of paramount equities or acts or omissions of the intervening lien holder to his prejudice while relying upon the apparent discharge of the senior lien." 36 Am. Jur. 916, Mortgages, § 458.

In this case the bill of sale in its renewed form was for a larger amount than the balance due on the original instrument, and in a contest between it and the bill of sale held by the plaintiff, Todd, it would only have had priority in the amount that was still due on the original bill of sale at the time the same was renewed, except for the fact that the instrument which was given by Propes to Todd was not properly recorded.

The bill of sale given by Propes to Todd was not witnessed so as to entitle it to record, and therefore was not notice to the Glidden Company at the time it obtained a renewal of the original bill of sale from the defendant, Propes. The bill of sale from the defendant, Propes, to the plaintiff, Todd, appeared upon its face to have been witnessed by the clerk of the superior court, but the undisputed evidence disclosed that the clerk did not witness the paper and it was not witnessed as required by Code § 67-1302, so as to entitle it to recordation. Consequently, the recording of this paper was a mere nullity, and it occupied the position of a paper that was never recorded at all. *Betts Evans Trading Co. v. Bass*, 2 *Ga. App.* 718 (2) (59 S. E. 8); *Barrow v. E. Tris Napier Co.*, 16 *Ga. App.* 309 (85 S. E. 267); *McCandless v. Yorkshire Guarantee &c. Corp.*, 101 *Ga.* 180, 182 (28 S. E. 663).

An interesting point is presented by the brief of the defendant in error that a public record can not be open to question except by direct attack, and consequently when a bill of sale is recorded by the clerk of the superior court, proof that it was not witnessed as it purports on the record to be can not be heard by the courts except when appropriate proceedings are filed constituting such direct attack, and in that event it would be necessary to make the clerk of superior court a party to the action instituted for the purpose of showing invalidity of his records. This is not a correct construction of the holdings of the appellate courts of this State to the effect that a public record can not be called into question except by a direct attack upon it. Those decisions simply hold that the record can not be shown to be incorrect, and that it must be taken as a true record of what it purports to be. It does not

mean that the invalidity of a paper required by the law of this State to be recorded by some public official can not after its recordation be attacked or that facts may not be proved showing that it was not entitled to record. The fact that it was not witnessed by one of the officials referred to in Code § 29-406, and consequently that its recordation was a nullity, does not fall within the rule above pronounced.

The vital question in the case is whether the sale of January 21, 1952, conducted by the Glidden Company was valid, for, regardless of the priorities of the papers hereinbefore referred to, if this sale was not held in conformity to the terms of the instrument under which the power to conduct it was had, the title of the Glidden Company would not be valid, and the defense filed by Propes that the title to the property sued for was in the Glidden Company would present no defense. This paper simply provided that the truck could be sold at public or private sale. We recognize that, if there had been a public sale, since no method was prescribed in the paper, it would have had to be conducted strictly in accordance with the rules of law, to have fixed title in the Glidden Company, but this paper also contained the power to sell the property at private sale. If the sale was not good as a public sale, it certainly was good as a private sale. There can be only two kinds of sales, public or private; and where the instrument authorized a private sale, and the evidence showed a valid private sale of the property to the Glidden Company, a verdict for the plaintiff defeating the title of the Glidden Company, which title was directly placed in issue by the plea and answer of the defendant, was not authorized, but on the other hand the evidence demanded a verdict in favor of the defendant.

The plaintiff demurred to the answer on the ground that it set up as a defense that the title to the truck was in the Glidden Company, and that it is no defense for the defendant to show title to the property sought to be recovered in a trover suit to be in a third person not a party to the suit. This position is not well taken. In order for a plaintiff to recover in a trover suit, he must show that he has title or right of possession. In the instant case the plaintiff alleged in his petition: "The defendant is in possession and control of certain property, to wit: one 1950 model International truck-tractor, motor number

AH1701, of the value of sixteen hundred thirty dollars and 74/100 ($1,630.74) to which petitioner claims title." The defendant certainly had a right to plead that this allegation was not true; that title was not in the plaintiff, though incidentally, in support of such allegation, he showed it to be in a third party. We have read the decisions cited by the plaintiff in his well-prepared brief. These decisions are *Anderson* v. *Wilson,* 45 *Ga.* 25, and *Arnoldsville Trading Co.* v. *Brotherton,* 61 *Ga. App.* 370 (6 S. E. 2d 210). These are authority for only two propositions: first, that a claim is not a remedy available to a stranger to a trover suit, who desires to assert that he is the owner of the property in dispute therein; and secondly, that ordinarily an intervention on the part of such third person is not a proper remedy to set up his title to property involved in a trover action. The case of *Delaney* v. *Sheehan,* 138 *Ga.* 510 (75 S. E. 632) leaves the question open as to whether in a "proper case" an intervention might be filed, but we are not concerned with that problem in this case. In *First National Bank* v. *Knowles,* 179 *Ga.* 378 (175 S. E. 791), it is held that a third party, claiming title to the property involved, cannot file an intervention in a statutory trover proceeding. None of the above-mentioned decisions has any application to a case in which the defendant in a trover suit pleads that the title to the property is in someone other than the plaintiff.

*Central Bank of Oakland, Calif.* v. *Georgia Grocery Co.,* 120 *Ga.* 883, 885 (48 S. E. 325), holds: "The plaintiff in trover must recover on the strength of his own title. An outstanding title in a third person may be shown by the defendant, and will defeat a recovery." In that case the only issue was title. Of course, the proof that the plaintiff does not have title to the chattels for which he brings a trover action will not defeat his recovery if he does not rely upon title to such chattel, but upon his right of possession thereof. The plaintiff in his brief expressed the opinion that the decision in the *Delaney* case overruled the *Central Bank* case, but upon very close examination of both cases we find that the *Delaney* case does not overrule the earlier one; and while it does criticise as obiter an expression contained in the earlier case, that an intervention could be filed by a stranger to a trover case, it does not refer to the holding above

quoted. In the instant case, the defendant relies upon the fact that a third person not a party to the suit holds title to the property, and that the defendant had possession by virtue of having rented the property from that third person.

Code § 105-1702 reads: "Mere possession of a chattel, though without title or wrongful, shall give a right of action for any interference therewith, except as against the true owner or the person wrongfully deprived of possession." The converse is necessarily true, that one in possession of personalty, even wrongfully, may defend against an action instituted by any one else except a person having title or right of possession of the property.

This is not only a well-established rule of law claiming much reverence by reason of its antiquity, but it is the only common-sense view of the subject it treats. If one who takes personal property into his possession without a semblance of right to do so could be forced by a stranger, having neither title or right of possession to the chattel, to surrender it, he could not return it to the person legally entitled to possession. Thus the wrongdoer would be deprived of his opportunity of repentance, and the person having the right of possession, of his property. While the defense set up by the defendant, if true, showed him rightfully and not wrongfully entitled to the chattel, we enter upon the above discussion to give pronouncement clearly to the rule that a defendant may always defend a trover action by showing that the plaintiff does not have title or right of possession.

None of the special grounds of the motion for new trial is meritorious.

*Judgment reversed on the main bill of exceptions; cross-bill affirmed. Sutton, C. J., and Felton, J., concur.*