A94A1831. ADLER et al. v. HERTLING et al.
A94A1832. ROGERS v. HERTLING et al.
A94A1833. STONE HARBOR LTD. PARTNERSHIP
v. HERTLING et al.
A94A1834. HERTLING et al. v. STONE HARBOR LTD.
PARTNERSHIP et al.
(451 SE2d 91)

POPE, Chief Judge.

Plaintiff Julius Hertling is a limited partner in Sahara Club/Desert Village Associates Limited Partnership (Sahara Club), which was formed to own and operate Regency Park Apartments in Atlanta. Hertling brought suit, individually and on behalf of Sahara Club, against Stone Harbor Limited Partnership (Stone Harbor) and Stone Harbor's individual limited partners, Jerome Adler, Richard Adler, Thomas Adler and Sheldon Rogers (collectively referred to as the Limited Partners). Stone Harbor was formed to own and operate Stone Harbor Townhouses in Atlanta. In the first amended complaint, Hertling asserts claims against Stone Harbor and the Limited Partners for conversion pursuant to OCGA § 14-8-14, for money had and received, on open account, and for common law conversion. Hertling also asserts a claim for constructive trust against Stone Harbor and the Limited Partners and a claim for attorney fees. It is undisputed that both Stone Harbor and Sahara Club shared a common general partner, Jules Aaronson. It is also undisputed that Stone Harbor and Sahara Club's apartment communities were both managed by Jason Property Management Company (Jason), another entity in which Jules Aaronson had a financial interest.

On or about December 1, 1987, Sahara Club refinanced its Regency Apartment real estate. As a result of this refinancing Sahara Club received net proceeds of approximately $2.8 million. It is undisputed that these proceeds were deposited into Sahara Club's operat-

ing account number 000000141-4 (Account 141-4) at First American Bank on December 1, 1987. Bank records show that on December 9, 1987, $1,808,777.71 of the refinancing proceeds were transferred from Account 141-4 to another account at First American, numbered 0000000301-8, and known as the "Jason Property Management Trust Account" (Account 301-8). The record shows that Jason set up Account 301-8 so that funds belonging to various entities it managed could be aggregated for placement into overnight investments and then returned, with interest, to the individual entities that contributed the funds. In order to facilitate these overnight investments, Jason and various entities it managed, including Sahara Club, entered into an "Investo-Matic Agreement" with First American Bank. Paragraph 15 of the Investo-Matic Agreement specifically states that: "Company and Owners agree that all funds in the various accounts of the Communities *are to be held by Company in escrow for the benefit only of the Community from which the funds were derived. . . .*" (Emphasis supplied.) The Investo-Matic Agreement was signed by Jason's president, by a representative of the bank and by Jules Aaronson, as a general partner of the other entities, which included Sahara Club. Stone Harbor was not a party to the Investo-Matic Agreement.

On December 9, 1987, the same day Sahara Club transferred the abovementioned portion of its refinancing proceeds to Account 301-8, the record shows that Jules Aaronson, acting as general partner of Stone Harbor and on its behalf, caused $1,998,531.52 to be distributed from Account 301-8, by wire, to the Limited Partners. It is undisputed that these distributions were made to the Limited Partners because of their contributions to Stone Harbor. Two wire transfers were made. The first transfer of $477,983.57 was sent to defendant Sheldon Rogers. The second transfer of $1,520,547.95 was sent to defendant Thomas Adler for his own benefit and for the benefit of Jerome Adler and Richard Adler. Of the total amount wired to Thomas Adler, the record shows that he kept $980,110.95 and distributed $270,219 to Richard Adler and $270,219 to Jerome Adler.

First American Bank's records show that at the beginning of the day on December 9, 1987, Account 301-8 had a balance of $530,321.91. The bank records also show that on that day a total of $1,945,341.34 was deposited into Account 301-8, $1,808,777.71 of which was comprised of Sahara Club refinancing proceeds, and $136,563.63 of which consisted of funds from other entities. Hertling contends that based on the above, at least $1,331,645.98 of the total $1,998,531.52 transferred to Stone Harbor and the Limited Partners necessarily consisted of money belonging to Sahara Club.

Hertling filed suit against Stone Harbor and the Limited Partners on behalf of Sahara Club pursuant to OCGA § 14-8-37, as a partner who had not wrongfully dissolved the partnership and, in the

alternative, requested that the trial court wind up the affairs of Sahara Club in accordance with said statute. The Limited Partners filed a motion to dismiss the complaint for failure to join indispensable parties. The trial court denied the motion. Stone Harbor and the Limited Partners then filed a motion to dismiss the complaint for failure to state a claim, or in the alternative, for summary judgment. Subsequently, Hertling filed a motion for partial summary judgment on behalf of Sahara Club as to the statutory conversion claim under OCGA § 14-8-14, the common law conversion claim and the constructive trust claim.

On January 7, 1994, a hearing was held on the parties' cross-motions for summary judgment. Upon conclusion of the hearing the trial court granted summary judgment to Hertling and Sahara Club as to the conversion claims and denied Stone Harbor and the Limited Partners' summary judgment motion. The trial court delayed ruling on whether Sahara Club was entitled to interest from the date of the conversion and whether $290,000 that Hertling received in a settlement of a federal court lawsuit against Sahara Club, Jules Aaronson, Jason and other parties, should be set off against any monies recovered on the conversion claims in this case. On January 27, 1994, Stone Harbor and the Limited Partners filed a request for reexamination of the trial court's ruling as to summary judgment. On that date, they also filed the affidavit of Jerrell Rosenbluth, with attached exhibits, and the Limited Partners filed third party complaints. Hertling and Sahara Club moved to strike the Rosenbluth affidavit and the third party complaints as untimely.

By order dated February 24, 1994, the trial court set forth in detail its ruling with regard to the grant of summary judgment to Hertling and Sahara Club. The trial court found that no issue of material fact existed as to liability based on the conversion claims and that not less than $1,331,645.98 of the total $1,998,531.52 transferred to the Limited Partners consisted of funds belonging to Sahara Club. Additionally, the trial court determined that the Limited Partners' liability was established by operation of OCGA § 14-9A-48, which states that "[a] limited partner holds as trustee for the partnership: . . . [m]oney or other property wrongfully paid or conveyed to him on account of his contribution." Consequently the trial court entered judgment against Stone Harbor in the amount of $1,331,645.98 and judgment against the Limited Partners in the following amounts: Thomas Adler, $980,110.95; Sheldon Rogers, $477,983.57; Richard Adler, $270,219; and Jerome Adler, $270,219. The court also ordered that the judgment could be enforced severally against Stone Harbor and the Limited Partners until the total amount of the judgment against Stone Harbor, together with post-judgment interest from the date of the order, was satisfied. The court rejected the argument that the

$290,000 received by Hertling in the settlement of his federal lawsuit should be set off against any recovery on the conversion claims, noting that the federal lawsuit involved different parties and different causes of action. Furthermore, the trial court, pursuant to OCGA § 7-4-15, denied Hertling and Sahara Club's request for prejudgment interest on the ground that the damages in the case were unliquidated as the amount of damages was in dispute.

In its February 24, 1994 order, the trial court also denied Stone Harbor and the Limited Partners' request for reexamination of the court's proposed ruling as to the grant of partial summary judgment to Hertling and Sahara Club. Additionally, the trial court granted Hertling and Sahara Club's motion to strike the Rosenbluth affidavit, and dismissed the Limited Partners' third party complaints without prejudice.

Jerome Adler, Richard Adler and Thomas Adler appealed from the trial court's February 24, 1994 order and from the denial of their motion to dismiss for failure to join indispensable parties. Their appeal was docketed in this court as Case No. A94A1831. Sheldon Rogers' appeal, which is based on the same grounds as the Adlers' appeal, was docketed in this court as Case No. A94A1832. Stone Harbor's appeal of the trial court's February 24, 1994 order was docketed in this court as Case No. A94A1833. In Case No. A94A1834, Hertling and Sahara Club appeal that portion of the trial court's order denying them prejudgment interest on the conversion claims.

### Case Nos. A94A1831, A94A1832, A94A1833

Stone Harbor and each of the Limited Partners rely on and specifically incorporate by reference the arguments and enumerations of error found in the others' individual appellate briefs. Consequently, we will combine the arguments and enumerations of error set forth in Case Nos. A94A1831, A94A1832 and A94A1833 and address them as a whole below.

1. Stone Harbor and the Limited Partners contend that the trial court's grant of partial summary judgment to Hertling and Sahara Club on the common law conversion claims was error. Specifically, they argue that the trial court's one day tracing of funds through Account 301-8 is flawed and incapable of proving conversion from said account or the existence of damages to Sahara Club. We disagree.

In this state "[c]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." (Citation and punctuation omitted.) *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598,

600 (417 SE2d 386) (1992). It is true that in order for a plaintiff to recover in a conversion suit "he must show that he has title or right of possession" to the property involved. See *Propes v. Todd*, 89 Ga. App. 308, 313-315 (79 SE2d 346) (1953). In this case, however, we reject Stone Harbor and the Limited Partners' contention that there is a genuine issue of material fact as to Sahara Club's ownership of or right to possess the funds that were transferred to the Limited Partners. It is undisputed that Sahara Club received proceeds amounting to approximately $2.8 million from the refinancing of *its* real estate. It also is undisputed that of that $2.8 million, $1,808,777.71 was transferred to Account 301-8. According to the specific terms of paragraph 15 of the Investo-Matic Agreement, which governed Sahara Club's relationship with regard to Account 301-8, any funds deposited in the account by Sahara Club were held in escrow for the sole benefit of Sahara Club for as long as such funds remained in said account.

Although Stone Harbor and the Limited Partners argue otherwise, the record clearly shows that the Investo-Matic Agreement was not modified so as to allow the use of Sahara Club funds by another entity. Under the terms of Sahara Club's partnership agreement, such a modification would have required the prior written approval of all of Sahara Club's limited partners and it is undisputed that no such approval was obtained. Any contention that the requirement of written approval was waived by Sahara Club's limited partners also is unsupported by the evidence. Moreover, paragraph 14 of the Investo-Matic Agreement itself provides that any modification of said agreement requires a writing signed by all the parties to the Investo-Matic Agreement in order to be valid. It is undisputed that First American Bank's representative did not sign any modification. Consequently, we conclude that under the terms of the Investo-Matic Agreement, the $1,808,777.71 deposited to Account 301-8 by Sahara Club amounted to a special deposit, and therefore title to said funds belonged to Sahara Club at the time the funds were transferred to the Limited Partners. See *Southern Exchange Bank v. Pope*, 152 Ga. 162, 165 (108 SE 551) (1921); see also *Newell v. Hadley*, 92 NE 507, 512 (Mass. 1910). Stone Harbor and the Limited Partners' contention that ownership of the funds in question cannot be determined without reviewing all transactions processed through Account 301-8, both prior to and after December 9, 1987, ignores the existence of the Investo-Matic Agreement and its express prohibition against the use of Sahara Club's funds for the benefit of any entity other than Sahara Club.

2. We also reject defendants' assertion that Hertling and Sahara Club cannot recover for conversion because they do not seek the recovery of specific coins or bills. Money in an account is capable of being converted even if it does not consist of specific coins or bills, so

long as the money converted constitutes specific identifiable funds. See *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598, supra; *Atlantic Mech. Contractors v. Hurston*, 185 Ga. App. 511 (364 SE2d 638) (1988). In this case we conclude that Hertling and Sahara Club's conversion claims involve distinct identifiable Sahara Club funds (i.e., the refinancing proceeds held in escrow in Account 301-8 for the sole use of Sahara Club). As such, the conversion claims are appropriate.

3. In light of the above, Stone Harbor and the Limited Partners' contention that the trial court erred in allowing Hertling and Sahara Club to trace Sahara's funds through Account 301-8 into the hands of Stone Harbor and the Limited Partners also is without merit. Based upon our determination in Division 1 that ownership of the funds was vested in Sahara Club at the time the funds were transferred and the fact that the funds were held in escrow for the sole use of Sahara Club, we conclude that the trial court's application of the "trust pursuit rule" was appropriate. Under that rule, a beneficiary of trust funds, such as those funds held in escrow for Sahara Club, is entitled to follow the funds through changes in their form. *Pittman v. Pittman*, 196 Ga. 397, 409 (26 SE2d 764) (1943). See generally Restatement, Restitution, §§ 213, 211 (1) and comment (a) thereto; Dobbs, Law of Remedies, §§ 5.16, 6.1 (3). Mingling of the funds in a mixed bank account does not destroy their identity so as to prevent their recovery in an action for conversion as long as the funds or a portion thereof can be traced. See *Newell v. Hadley*, 92 NE 507, supra; *Loring v. Baker*, 106 NE2d 434 (Mass. 1952). See generally 26 ALR 3 (1923); 55 ALR 1275 (1928); 102 ALR 372 (1936); Restatement, Restitution, § 213. In the case at bar the record clearly shows that $1,998,531.52 was transferred from Account 301-8 to the Limited Partners on December 9, 1987. On that same day, Account 301-8 had a beginning balance of $530,321.91. The bank records show that of the total amount deposited to Account 301-8 on December 9, 1987, $1,808,777.71 consisted of Sahara Club refinancing proceeds and $136,563.63 consisted of funds from other entities. By applying the beginning balance in Account 301-8, plus the amount of the funds deposited to the Account by entities other than Sahara Club, to the $1,998,531.52 transferred to the Limited Partners, we conclude that the trial court was correct in its determination that at least $1,331,645.98 of said transfer consisted of distinct Sahara Club funds. Consequently, Stone Harbor and the Limited Partners' argument that the tracing theory is incapable of proving damages is without merit.

4. Defendants also contend Sahara Club cannot recover for conversion because it did not sustain a loss. Specifically, Stone Harbor and the Limited Partners argue that any money converted by them

was replaced by funds from other partnerships that participated in the centralized system and therefore, Sahara Club did not suffer any loss. As the trial court determined, however, such an argument is legally irrelevant. While it is true that the use of another partnership's funds by Sahara Club may give rise to a separate cause of action in favor of that partnership, Stone Harbor and the Limited Partners cannot assert any such theoretical claim against Sahara Club on behalf of any other partnership and neither Stone Harbor nor the Limited Partners have alleged or proven that Sahara Club converted any money belonging to them. Therefore, the Limited Partners were not entitled to take any portion of the funds in question and their claim that the trial court's adoption of the one day tracing theory improperly precluded them from demonstrating their entitlement to said funds is meritless.

5. The trial court was also correct in its determination that no genuine issue of material fact existed as to Stone Harbor and the Limited Partners' liability under the statutory conversion claim. OCGA § 14-8-14 provides for the recovery from a partnership for losses caused by the wrongful act of a partner. Specifically, OCGA § 14-8-14 states that: "[t]he partnership is bound to make good the loss: (1) [w]here one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and (2) [w]here the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership." In this case, Jules Aaronson testified by affidavit that, in his capacity as general partner of Stone Harbor and on its behalf, he caused Sahara Club funds (as traced) to be transferred to the Limited Partners on account of their contributions to Stone Harbor. Such a transfer violated the terms of the Investo-Matic Agreement and Sahara Club's partnership agreement and as such constitutes misapplication of the funds. Because Jason was acting as an agent of Stone Harbor at the time the funds were transferred, the misapplication of said funds necessarily occurred while they were in the custody of Stone Harbor. Therefore, Stone Harbor is liable to Sahara Club for conversion under OCGA § 14-8-14. Under OCGA § 14-9A-48 the Limited Partners also are liable to Sahara Club for common law and statutory conversion because they hold as trustees for Stone Harbor money or other property wrongfully paid to them on account of their contributions. Therefore, the trial court did not err in holding Stone Harbor and the Limited Partners severally liable to Sahara Club. Moreover, we reject the contention that the trial court held the Limited Partners liable to a greater extent than Stone Harbor. Review of the trial court's February 24, 1994 order clearly shows that the Limited Partners' liability for conversion in this case is only

equal to that of Stone Harbor.

6. Although we have concluded that no genuine issue of material fact exists with regard to Stone Harbor and the Limited Partners' liability to Sahara Club and that at least $1,331,645.98 of distinct Sahara Club funds were wrongfully converted, there still remains a genuine issue concerning the recovery of damages by Sahara Club in this case. Specifically, an issue of fact remains as to whether Hertling's recovery of money damages and a judgment against Sahara Club in his federal lawsuit affects the amount of damages Sahara Club is entitled to recover here. Even though the trial court was correct in its statement that the federal case and this case involve different parties and different causes of action, the record shows that both cases to some extent seek recovery for the misapplication of the proceeds from the refinancing of Sahara Club's real estate. Under Georgia law, double recovery for the same injury is inappropriate even if it is sought from different parties. See *Mathis v. Melaver*, 206 Ga. App. 392, 393 (425 SE2d 401) (1992); see also OCGA § 9-2-4. Although we expressly reject the argument that Hertling's recovery in the federal suit necessarily bars any recovery by Sahara Club here, we conclude that a factual issue exists as to the extent, if any, that any such recovery here would be duplicative of Hertling's recovery in the federal lawsuit. Consequently, the trial court erred in finding that no issue of material fact existed as to Stone Harbor and the Limited Partners' entitlement to a set-off of any money damages awarded to Hertling as the result of his federal lawsuit. The trial court also erred in striking the affidavit of Jerrell Rosenbluth and the exhibits attached thereto, to the extent that the affidavit and its exhibits shed light on the issue of whether a set-off of damages is appropriate in this case.

7. The Limited Partners' contention that the trial court erred in denying their motion to dismiss for failure to join indispensable parties is without merit. Contrary to the Limited Partners' assertions otherwise, Jules Aaronson, Allen Aaronson (Sahara Club's other limited partner), Jason and all the entities that participated in Jason's centralized accounting system are not indispensable to this lawsuit. Jules Aaronson and Jason are at most only joint tortfeasors and therefore, they are not necessary or indispensable to the present action because their liability is both joint and several. *Ford v. Olympia Skate Center*, 213 Ga. App. 600, 602 (445 SE2d 362) (1994); *Freeman v. Low X-Ray Corp.*, 130 Ga. App. 856 (204 SE2d 803) (1974); *McGee v. Haynes*, 128 Ga. App. 709 (197 SE2d 767) (1973). As the trial court noted, defendants could have brought third party suits against Jules Aaronson and Jason but defendants elected not to do this prior to the trial court's ruling on the parties' cross-motions for summary judgment. Allen Aaronson is also not an indispensable party because any interest he may have in this case as a limited partner in Sahara Club

is adequately represented by Sahara Club and the facts of the case demonstrate that he received no Sahara Club funds as a limited partner in Stone Harbor. Additionally, the trial court was correct in its determination that the entities that participated in the centralized account were not indispensable. Hertling and Sahara did not assert a claim for an accounting of the centralized system and therefore the participants in the system are not indispensable to the adjudication of the claims set forth in the first amended complaint.

8. We also reject Stone Harbor and the Limited Partners' assertion that genuine issues of material fact exist as to the application of the statute of limitation and the equitable doctrines of waiver and estoppel to the case at bar. The uncontradicted evidence in this case clearly shows that Jules Aaronson, who had a fiduciary relationship with Sahara and Hertling, actively concealed the misappropriation of Sahara Club funds, as well as the transfer to the Limited Partners of said funds, from Hertling for approximately three years. We conclude that the trial court was correct in its determination that such active concealment was fraudulent, and therefore tolled the statute of limitation until such time as Hertling discovered the misappropriation. Under OCGA § 9-3-96, where a fiduciary relationship exists between the party defrauded and the party under whom defendants claim, the applicable statute of limitation is tolled until the time such fraud is discovered. See *Middleton v. Pruden*, 57 Ga. App. 555, 559 (196 SE 259) (1938). The evidence in this case clearly shows that Hertling did not become aware of any misappropriation of Sahara Club funds until June 29, 1992 and that suit was filed in this case on August 10, 1992. Consequently, Hertling and Sahara Club's claims of conversion are not barred by the statute of limitation in this case.

Additionally, the record evidence in this case does not support Stone Harbor and the Limited Partners' contention that issues of fact exist as to whether or not Hertling was aware of the manner in which Jason's centralized accounting system was operated prior to the conversion of Sahara Club's funds. The affidavit testimony of Glenn Aaronson (Sahara Club's other general partner) that a copy of the modification to the Agreement "was provided to [Hertling] in 1982 with one of the operating reports sent to him on a regular basis" does not create a genuine issue of fact to be resolved in this case. Hertling denied ever receiving a copy of said modification and there is no evidence in the record that any such modification was sent to Hertling by mail, properly addressed with proper postage affixed. See *American Express Travel Related Svcs. Co. v. Berlye*, 202 Ga. App. 358 (414 SE2d 499) (1991). Moreover, even if there was a presumption that Hertling had received a copy of the modification, his uncontradicted affidavit testimony that he lacked knowledge of the modification serves to overcome any such presumption. See *Carmichael Tile Co. v. McClel-*

*land*, 213 Ga. 656, 659 (100 SE2d 902) (1957). Additionally, even if Hertling had actually received a copy of the modification it would not have placed him on notice that Sahara Club's funds could be used by Stone Harbor or its Limited Partners because Stone Harbor and the Limited Partners were not parties to the purported modification. Therefore, the trial court did not err in its determination that no issues of material fact existed with regard to the abovementioned affirmative defenses.

Based on the above, we conclude that the trial court appropriately granted Hertling and Sahara Club summary judgment with respect to Stone Harbor and the Limited Partners' liability for statutory and common law conversion. Consequently, the trial court's denial of Stone Harbor and the Limited Partners' cross-motion for summary judgment also was appropriate. The trial court did err, however, in its determination that no issue of material fact existed as to the amount of damages Sahara Club may recover on its conversion claims and whether any such recovery should be offset by all or any portion of the money damages Hertling received in settlement of his federal lawsuit. We also hold that the trial court did not err in denying the Limited Partners' motion to dismiss for failure to join indispensable parties.

*Case No. A94A1834*

In this appeal Hertling and Sahara Club claim that the trial court erred in denying their request for prejudgment interest from the date of Stone Harbor and the Limited Partners' conversion of Sahara Club's funds. In light of our holding in the cases above, we conclude that the trial court correctly determined that prejudgment interest was inappropriate here because the damages in this case are unliquidated in that their amount is in dispute. See OCGA § 7-4-15. Consequently, the trial court's denial of Hertling and Sahara Club's request for prejudgment interest is affirmed.

*Judgment in Case Nos. A94A1831, A94A1832 and A94A1833 affirmed in part and reversed in part. Judgment in Case No. A94A1834 affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED NOVEMBER 18, 1994 —
RECONSIDERATIONS DENIED DECEMBER 19, 1994 —

*Troutman Sanders, Mark S. Vanderbroek, A. William Loeffler, Ralph H. Greil, Kitchens, Kelley & Gaynes, Mark A. Kelley, Stephen V. Kern, Lawrence A. Rosenbluth, for Adler and Stone Harbor.*
*Parker, Terry & Center, J. Steven Parker, Robert D. Terry, for*

Hertling.