**COLONIAL PACIFIC LEASING CORPORATION, Plaintiff,**

v.

**N & N PARTNERS, LLC, Larry T. Fletcher, and Thomas G. Crymes, Defendants.**

**Civil Action No. 3:12–cv–143–TCB.**

United States District Court, N.D. Georgia, Newnan Division.

Nov. 4, 2013.

**1348**

Lauren Annette Rucker, Windy Angela Hillman, Teah N. Glenn, Wargo & French LLP, Atlanta, GA, for Plaintiff.

Robert T. Trammell, Jr., The Trammell Firm, LLC, Luthersville, GA, for Defendants.

### *ORDER*

TIMOTHY C. BATTEN, SR., District Judge.

This diversity case comes before the Court on Plaintiff Colonial Pacific Leasing Corp.'s motion for summary judgment [22] and Defendants N & N Partners, Larry Fletcher and Thomas Crymes's motion for partial summary judgment [28].

## I. Background

Between July 2007 and July 2008, N & N executed three agreements to finance the purchase of commercial equipment. The first agreement was with Reynolds—Warren Equipment Company, Inc., which assigned its interest under the agreement to Associates First Capital Corporation on July 23, 2007. The second and third agreements were with Associates First Capital Corporation, which assigned all three agreements to GE Capital Financial, Inc. effective July 31, 2008.

The collateral securing N & N's obligations under each agreement was the equipment being purchased. For each agreement, Fletcher and Crymes executed a continuing guaranty in favor of the lender.

In September 2009 N & N defaulted under the agreements by failing to make the payments as they came due. Soon thereafter GE Capital repossessed the collateral, which was sold in December 2009 and March 2010. Before each sale, Defendants received notice and had an opportunity to redeem the collateral. After the sales, the proceeds were credited to N & N's account, but a debt remained.

Effective December 31, 2009, GE Capital assigned all three agreements to one of its subsidiaries, Plaintiff Colonial.

Colonial filed this action on October 1, 2012, alleging that N & N, Fletcher and Crymes breached the agreements and guaranties. It seeks compensatory damages of $ 101,094.14 ($75,014.34 on agreement 1; $17,997.65 on agreement 2; and $8,082.15 on agreement 3). It also seeks to enforce a clause in each agreement that authorizes the recovery of attorneys' fees in the event of default.

Colonial has moved for summary judgment. Defendants admit default but oppose Colonial's motion, primarily by contending that the sale of the collateral was not commercially reasonable. Defendants point out that notice of the sale of the agreement 2 and 3 collateral was provided by Colonial although GE Capital—not Colonial—was the actual secured party at the time the notice was given. Based on this alleged defect, Defendants seek partial summary judgment. Second, Defendants contend that Colonial failed to establish the collateral's fair market value as of the date of each sale.

## II. Legal Standard

Summary judgment is proper when no genuine issue about any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. Whether the Sale of the Collateral Was Commercially Reasonable

The first issue is whether the sale of the collateral was commercially reasonable.[1]

---

**1.** Colonial first argues that deficiency actions between secured creditors and debtors are just run-of-the-mill breach-of-contract actions and that summary judgment is appropriate where the secured creditor simply establishes that a valid contract existed that was breach-

This is a question of Georgia law that under the *Erie* doctrine must be answered by applying Georgia substantive law and federal procedural law.

The Uniform Commercial Code assigns the burden of proof to secured creditors where the commercial reasonableness of a sale of collateral is challenged. After default, a secured creditor may sell the collateral publicly or privately · at any time and place and on any terms so long as everything about the sale, "including the method, manner, time, place, and other terms," is commercially reasonable. O.C.G.A. § 11–9–610(b); *Mason Logging Co. v. Gen. Elec. Capital Corp.*, 322 Ga. App. 708, 746 S.E.2d 180, 183 (2013). After the sale, the proceeds must be credited to the debtor's account. O.C.G.A. § 11–9–608(a). If a debt remains, the creditor may pursue a deficiency action against the debtor and any guarantors. *Id.* § 11–9–607(a)(3).

█ When, as here, the debtors challenge the sale's commercial reasonableness, the secured creditor must establish that the sale was consistent with the procedural requirements of Article 9 and that its terms were fair and reasonable. *Id.* § 11–9–626(a)(2); *Mason Logging*, 746 S.E.2d at 183. That is, the secured creditor must show that (1) the sale complied with the notice, time, place and manner requirements of Article 9, O.C.G.A. §§ 11–9–611 to –614; *AKA Mgmt., Inc. v. Branch Banking & Trust Co.*, 275 Ga.App. 615, 621 S.E.2d 576, 580 (2005); (2) the sale price was fair and reasonable, which requires evidence of the collateral's value at the time of repossession, *Mason Log-*

*ging*, 746 S.E.2d at 183; and (3) the sale price was less than the outstanding debt, *id.*

█ Should the secured creditor fail to provide this proof, "it is presumed that the value of the goods is equal to the amount of the debt." *Id.* (quoting *Brewer v. Trust Co. Bank*, 205 Ga.App. 891, 424 S.E.2d 74, 76 (1992)) (internal quotation marks omitted); *see also* O.C.G.A. § 11–9–626(a)(4). But if the secured creditor provides this proof, the burden shifts to the debtor to "present[ ] evidence of specific facts to show the existence of a genuine issue for trial." *Se. Recovery Servs., LLC v. Northen*, 255 Ga.App. 516, 565 S.E.2d 861, 864 (2002). In other words, while normally a question of fact, commercial reasonableness "may be determined as a matter of law whe[n] the creditor offers prima facie, uncontroverted evidence that the sale was reasonable." *Id.* And the fact that a better price was possible—had the sale occurred at a different time or under different circumstances than those selected by the secured party does not by itself prove that the sale was commercially unreasonable. O.C.G.A. § 11–9–626(a); *Mason Logging*, 746 S.E.2d at 183.

\* \* \*

Colonial must show that the three sales were commercially reasonable. It argues that they were: Defendants received timely notice of the sales; the sales occurred at a time, place and in a manner typical for this type of collateral; and the proceeds equaled or even exceeded the collateral's fair market value.

---

ed. Some Georgia cases cited by Colonial, such as *JJM Trucking, Inc. v. Caterpillar Financial Services Corp.*, 295 Ga.App. 560, 672 S.E.2d 529 (2009), uphold the entry of a deficiency judgment upon proof that the debtor breached a security agreement and a debt remains. But those cases do not involve a

challenge by the debtor to the commercial reasonableness of the collateral's disposition; in such cases, mere proof of a valid contract and breach thereof is insufficient to authorize entry of a deficiency judgment, i.e., the secured creditor must prove that the sale was commercially reasonable.

Defendants counter with essentially two arguments. First, Colonial did not comply with the procedural requirements of Article 9. Second, Colonial cannot produce admissible evidence to overcome the presumption that the value of the collateral was equal to the amount of the debt.

## A. The Procedural Propriety of the Sale of the Agreement 1 Collateral

Defendants suggest that the sale of the agreement 1 collateral was commercially unreasonable for two reasons. First, it may have occurred on a date other than the one specified in the notice. Second, the sale did not comply with the public-sale provision: specifically, it occurred too early in the morning and was improperly advertised. Neither argument has merit.

### 1. The Date of the Agreement 1 Collateral's Sale

■ The sale transpired on the date specified in the notice: March 25, 2010. Defendants base their argument on an interrogatory answer from a prior state-court proceeding between the parties, in which Colonial stated that the sale date was March 15, 2010. This interrogatory answer undoubtedly contains a scrivener's error: every other sale-related document says that the sale occurred on March 25. More importantly, in their response to Colonial's statement of material facts Defendants admitted that the sale occurred on March 25. The Court therefore rejects this argument.

### 2. Compliance with the Public–Sale Provision

Defendants' second argument is also meritless. Article 1 of the UCC provides general definitions for terms that are effective unless modified by a subsequent article. O.C.G.A. § 11–1–201. Included

among the defined terms is "public sale," which is defined as follows:

[A] sale:

(A) Held at a place reasonably available to persons who might desire to attend and submit bids; and

(B) At which those attending shall be given the opportunity to bid on a competitive basis; and

(C) At which the sale, if made, shall be made to the highest and best bidder; and

(D) Except as otherwise provided in this title for advertising or dispensing with the advertising of public sales, of which notice is given by advertisement once a week for two weeks in the newspaper in which the sheriff's advertisements are published in the county where the sale is to be held, and which notice shall state the day and hour, between 10:00 A.M. and 4:00 P.M., and the place of sale and shall briefly identify the goods to be sold.

The provisions of this paragraph shall not be in derogation of any additional requirements relating to notice of and conduct of any such public sale as may be contained in other provisions of this title but shall be supplementary thereto.

*Id.* § 11–1–201(31.1).

It is undisputed that Colonial's notice stated that the sale of the agreement 1 collateral would begin at 8:00 a.m. It is also undisputed that this sale was not advertised in the newspaper that publishes notices of sheriff's sales. These alleged statutory violations, according to Defendants, create a jury question about the sale's commercial reasonableness.

■ The Court disagrees. As an initial matter, the Court assumes without deciding that the sale of the agreement 1 collateral was a "public sale" within the meaning of § 11–1–201(31.1); neither side suggests

otherwise.[2] Nevertheless, Defendants' argument fails because Georgia permits secured creditors to recover a deficiency without strictly complying with these statutory provisions. *See Emmons v. Burkett*, 256 Ga. 855, 353 S.E.2d 908, 911 (1987) (holding that secured creditors who fail "to give notice of a sale . . . [or] to conduct a commercially reasonable sale" may still recover a deficiency judgment provided that they overcome the "rebuttable presumption" codified in O.C.G.A. § 11–9–626).

█ Here, Defendants do not allege that they were damaged because the sale was held at 8:00 a.m. rather than 10:00 a.m. or because it was not advertised in the newspaper. Instead, they suggest that these violations create a triable question about the sale's commercial reasonableness. But these questions—what time the sale occurred and how it was advertised—simply fold into whether the manner of the sale was commercially reasonable. On this point, Tangelia McCleveland, a remarketing manager for GE Capital, testified in her affidavit—and Defendants do not dispute—that the sale was consistent with the reasonable commercial practices of dealers in similar equipment. Consequently, the sale occurred in a commercially reasonable manner. O.C.G.A. § 11–9–627(b)(3). The Court thus rejects Defendants' argument.

Defendants' argument fails for another reason. Colonial could have sold the agreement 1 collateral by private rather than public sale. The question then is whether the sale of the agreement 1 collateral must be classified as a public sale. The Court holds that the answer is no.

█ Although the notice states that Colonial intends to sell the agreement 1 collateral by public sale, Georgia law does not require Colonial to actually do so. *See*

O.C.G.A. § 11–9–613(1)(C) (providing that a notification of disposition is sufficient if it states, among other things, "the method of *intended* disposition" (emphasis added)). Nor does Georgia law preclude the Court from finding that the sale of the agreement 1 collateral was a valid private sale, even though it took place in public and the collateral went to the highest bidder. *Accord Propes v. Todd*, 89 Ga.App. 308, 79 S.E.2d 346, 350 (1953) (holding in pre-UCC case that even if seller's attempted public sale failed as a matter of law, "it was certainly good as a private sale" because the contract provided that the collateral could be sold by public or private sale), *overruled on other grounds by Leeds Bldg. Prods., Inc. v. Sears Mortg. Corp.*, 267 Ga. 300, 477 S.E.2d 565 (1996). Debtors do not have the right to have their collateral sold by public sale except as provided for by law.

█ The UCC does not define private sale. But it does provide that every aspect of a private sale must be commercially reasonable. *John Deere Constr. & Forestry Co. v. Mark Merritt Constr., Inc.*, 297 Ga.App. 743, 678 S.E.2d 183, 184 (2009). As a practical matter, this means that the creditor must send proper notice, the sale must occur after the time stated in the notice, and the sale price must be fair and reasonable. The sale of the agreement 1 collateral meets each requirement. Here, however, the Court only addresses the sufficiency of the notice and the timeliness of the sale. That the collateral's sale prices were fair and reasonable is addressed in Part III.C, *infra*.

█ Although Colonial's notice states that it intends to sell the agreement 1 collateral by public sale, the notice is sufficient for purposes of a private sale as long

---

**2.** After its 2001 revision, Article 9 refers to "disposition" by "public or private *proceed-*

*ings*." The term "public sale" no longer appears in Article 9.

as this "[m]inor error[ ][was] not seriously misleading." O.C.G.A. § 11-9-613(3)(B). The Court finds that this error was not seriously misleading. *Accord Colonial Pac. Leasing Corp. v. Elite S-W Mo., Inc.,* No. 6:09-cv-3154-RED, 2010 WL 3119448, at *3-4 (W.D.Mo. Aug. 4, 2010) (holding that notice of private sale was sufficient even though it stated that the auction would be public instead of private because the sale took place after the date and time stated in the notice).

Here, the notice was sent twenty-five days before the sale occurred, provided the date and time for the sale, and the sale occurred after the date and time it was noticed for. Accordingly, the sale was both properly noticed and timely; moreover, the sale prices were fair and reasonable, as discussed *infra.* The Court thus finds that the sale of the agreement 1 collateral qualifies as a valid private sale and that Colonial did not have to comply with the statute's public-sale provisions regarding time and advertising.

**B. Defendants' Motion for Partial Summary Judgment**

Defendants theorize that the sale of the agreement 2 and 3 collateral was commercially unreasonable because notices of these sales were sent by Colonial, which was not then the secured creditor. Secured creditors who repossess and subsequently sell collateral must provide "a reasonable authenticated notification" to the debtor and other interested parties, like guarantors, before doing so. O.C.G.A. §§ 11-9-611(b, c). For nonconsumer goods, a notification sent after default and at least ten days before the earliest time that the sale will occur is reasonable. *Id.* 11-9-612(b).

On December 1, 2009, GE Capital was the secured creditor, but one of its subsidiaries, Colonial, sent the notices. In Defendants' view, these notices are therefore a legal nullity. Worse still, they engender the type of confusion that the UCC was designed to obviate. And worst of all, they "eviscerated" their statutory right of redemption. Thus, Defendants contend, these sales were commercially unreasonable, and partial summary judgment is therefore appropriate.

▇▇▇▇ The Court disagrees. First, defective notice does not necessarily preclude a deficiency judgment. The Georgia Supreme Court made this plain in *Bradford v. General Electric Credit Corp. of Georgia,* 183 Ga.App. 782, 359 S.E.2d 757 (Ga.1987). After reiterating that debtors and guarantors have a right to be notified by the secured creditor of their statutory right of redemption, the court held that the violation of this right does not automatically render the sale commercially unreasonable. The secured creditor can recover the deficiency as long as it overcomes the rebuttable presumption by offering "evidence of the fair and reasonable value of the collateral and the evidence must show that such value was less than the debt." *Id.* at 758 (quoting *Emmons,* 353 S.E.2d at 910). After *Bradford* and *Emmons,* debtors cannot obtain summary judgment by merely citing to an allegedly defective notice. But Defendants attempt to do just that.[3] Therefore, their motion for partial summary judgment will be denied.

Article 9 also supports this conclusion. That Colonial rather than GE Capital sent the notices creates an issue of fact unless this was a "[m]inor error[ ] that [was] not

---

**3.** Defendants briefly mention that Crymes did not receive notice of the sale of the agreement 2 collateral and N & N did not receive notice of the agreement 3 collateral. Although this constitutes a statutory violation, it does not entitle Crymes and N & N to even partial summary judgment under *Bradford* and *Emmons.*

seriously misleading." *See* O.C.G.A. § 11–9–613(2, 3). Defendants suggest that this error was serious: receiving the notifications from Colonial "serve[d] nothing more than to create the very confusion that the UCC is designed to avoid" and "eviscerated" their statutory right of redemption. [28 at 6].

 These arguments, however, have no factual foundation. First, the agreements do not require the lender (or an assignee) to notify Defendants of any assignment. Indeed, while the first agreement is silent on this issue, the second and third agreements explicitly provide that the lender can assign the agreement "without notice to, acknowledgment of, or consent from [N & N]." [24 at 5, 33; 25 at 6]. Second, Defendants offer no evidence that suggests that their right of redemption was "eviscerated." For instance, they do not allege that had GE Capital sent the notices they could have redeemed the collateral. Thus, under the circumstances the Court finds that the notifications' misstatement—that Colonial was the secured creditor—was merely a "[m]inor error[ ] that [was] not seriously misleading."[4] Accordingly, Defendants' motion for partial summary judgment will be denied. The Court next turns to whether the collateral's sale prices were fair and reasonable.

## C. Whether the Sale Prices Were Fair and Reasonable

 Defendants contend that Colonial cannot prove that the collateral sold for fair and reasonable prices. Under Georgia law, proof of a fair and reasonable sale price requires evidence of the collateral's

value at the time of repossession. *Mason Logging,* 746 S.E.2d at 183. In Defendants' view, Colonial has failed to provide such proof.

Colonial has filed the affidavit of Tangelia McCleveland, a remarketing manager with GE Capital, who is responsible for determining the value of the collateral repossessed by or on behalf of Colonial. McCleveland testified that each piece of collateral sold for a price that was either consistent with or above its fair market value. Her testimony was based on her knowledge and familiarity with the manner in which equipment similar to the collateral is sold and her review of the business records regarding the sale of the collateral. Defendants contend that McCleveland's affidavit is insufficient because Colonial has not provided an appraisal showing the value of the collateral as of the date of repossession.

 The Court disagrees. Rule 56(c)(4) provides that affidavits must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated." To be sufficient, an affidavit must be based on personal knowledge. *Pace v. Capobianco,* 283 F.3d 1275, 1278 (11th Cir.2002). And affiants should state the basis for their personal knowledge. *See Kelly v. Curtis,* 21 F.3d 1544, 1555 (11th Cir.1994). At the summary-judgment stage, the facts set out in the affidavit need only be reducible to an admissible form. *Rowell v. BellSouth Corp.,* 433 F.3d 794, 800 (11th Cir.2005). And whether evidence is (or would be) admissible is a question of law. FED.

---

**4.** In their reply brief in support of their motion for partial summary judgment, Defendants cite *Melia v. Brown,* 301 Ga.App. 760, 688 S.E.2d 675, 682 (2009), for the well-known legal principle that each corporation is a separate entity whose corporate form

should be discarded cautiously. This legal principle sheds little if any light on whether the notifications, which wrongly identified Colonial as the secured creditor, were seriously misleading. In any event, Defendants have not even alleged that they were.

R.EVID. 1101; *Johnson v. William C. Ellis & Sons Iron Works, Inc.,* 609 F.2d 820, 821 (5th Cir.1980).

▇▇ Affiants can have personal knowledge for purposes of Rule 56(c)(4) based on their review of business records and files. *See Duke v. Nationstar Mortg., L.L.C.,* 893 F.Supp.2d 1238, 1244 (N.D.Ala. 2012) (collecting cases). This is because what affiants must have personal knowledge of is admissible facts. *See* FED. R.CIV.P. 56(c)(4). And business records or files are admissible under a number of the Federal Rules of Evidence. *E.g.,* FED. R.EVID. 803(6).

▇▇ Here, McCleveland testified that she personally reviewed GE Capital's business records regarding the valuation of the collateral upon repossession. This satisfies the personal knowledge requirement. As a remarketing manager for GE Capital, she is qualified to testify, independent of any such records, about the value of the collateral.

▇▇ Defendants make much of the fact that Colonial has no documents related to an appraisal of the collateral. But they do not cite, nor has the Court found, any Georgia law that the requires an appraisal to establish the collateral's value at the time of repossession. So the absence of an appraisal does not mean that Colonial cannot produce admissible evidence of the value of the collateral at the time of repossession. Indeed, the facts presented in McCleveland's affidavit—the valuations of the collateral in GE Capital's business records plus McCleveland's own personal knowledge as a remarketing manager independent of her review of some documents—are capable of being reduced to an admissible form. The Court thus holds that the collateral's sale prices were fair and reasonable, as McCleveland testified. Hence, Colonial overcomes the rebuttal presumption that the value of the sale was equal to the amount of the debt and may recover for the amount of deficiency under each agreement.[5] *See Emmons,* 353 S.E.2d at 910.

### D. Whether a Jury Question Exists About the Deficiency Under Each Agreement

Defendants challenge whether Colonial has adequately established the amount of the deficiency under each agreement. They first note that as of September 2009 N & N had made twenty-four payments under the first agreement, and according to the amortization schedule included with that agreement, the outstanding debt should have been $104,693.10.[6] They next point to the deficiency claimed under each agreement in the February 26, 2010 complaint that Colonial filed in state court. There, before the proceeds from the collateral's sale had been credited to N & N's account, the deficiency under each agreement totaled $114,402.74; $14,075.85; and $31,621.48. After crediting the proceeds to N & N's account, the deficiencies are less than the amounts that Colonial now seeks.

---

**5.** In December 2009, when the agreement 2 and 3 collateral was sold, Defendants state that they knew buyers who were willing to pay far more than the amount that the collateral ultimately sold for. In their view, this creates an jury question about whether the sale prices were fair and reasonable. It does not. Just because a better price was possible if had the sale had occurred under different circumstances than those Colonial selected does not make the sale was commercially unreasonable. *See* O.C.G.A. § 11–9–626(a); *Mason Logging,* 746 S.E.2d at 183.

**6.** Even though amortization schedules were included with the second and third agreements, Defendants make this argument only for the first agreement.

### 1. The Amortization Schedule

The amortization schedule does not create a jury question about the amount of the deficiency. The amortization schedule states that it is "to be used for general accounting purposes only"; it "does not include any late charges, taxes, or other charges that may be assessed to your account"; and it "DOES NOT REPRESENT A BUY OUT, PAY OFF, CASUALTY OR TERMINATION VALUE." Thus, that the amount owed according to the amortization schedule is less than the deficiency Colonial now seeks is hardly surprising: several months' worth of costs and fees were added after Defendants' default. The Court thus rejects this argument.

### 2. The State–Court Complaint

■ This argument has merit. As Defendants note, Colonial has filed two actions to recover the deficiency under the agreements and has sought a different amount each time. And the difference is substantial: in the state-court proceeding Colonial sought to recover $47,973.33 (after subtracting the proceeds of the collateral's sale), but it now seeks to recover $101,094.14—a difference of $53,120.81. In Defendants' view, this discrepancy precludes summary judgment in favor of Colonial.

Colonial counters that when the Georgia Court of Appeal addressed "this *identical issue* in *Traditional Properties, Inc. v. Performance Food Group of Georgia, LLC,* [291 Ga.App. 442, 662 S.E.2d 250, 252 (Ga.Ct.App.2008)]," it "clarified that unverified pleadings are insufficient to rebut prima facie evidence submitted in support of a motion for summary judgment." [35 at 5 (emphasis added)]. In Colonial's view, Georgia law precludes Defendants from creating a factual dispute by pointing to unverified pleadings.

Colonial is wrong. Cases like *Traditional Properties* support the proposition that a party cannot use its *own* unverified pleadings to create a factual dispute once a prima facie case has been established. This is why the defendants in *Traditional Properties* could not rely on their own pleadings and discovery responses to rebut the prima facie case. *Id.* Here, however, Defendants are using *Colonial's* pleadings from the state-court case as an admission against Colonial.

■ "Ordinarily, admissions against interest contained in the pleadings are admissible as evidence." *Aiken v. Dep't of Transp.,* 171 Ga.App. 154, 319 S.E.2d 58, 59 (1984). This is true even if that pleading was withdrawn or stricken from the record. *Lawson v. Duke Oil Co.,* 155 Ga. App. 363, 270 S.E.2d 898, 899 (1980). Thus, even if all of the other evidence in the state-court case is consistent with Colonial's claims here, Defendants could still introduce these statements in Georgia courts. Of course, whether the deficiencies alleged in the state-court complaint are admissible is a question of federal (not Georgia) law. The answer, however, is the same: they are. *Mitchell v. Fruehauf Corp.,* 568 F.2d 1139, 1147 (5th Cir.1978).

Defendants are therefore right: the Court cannot grant Colonial complete summary judgment. But it can, and does, grant summary judgment in favor of Colonial on all other issues. Thus, the only issue to be tried is the amount of the deficiency under each agreement.

## IV. Conclusion

Plaintiff's motion for summary judgment [22] is GRANTED in part and DENIED in part, and Defendants' cross-motion motion for partial summary judgment [28] is DENIED.